[No. 10,509.—Department No. 1.]

## PEOPLE v. ALIVTRE.

EVIDENCE—THREATS—CRIMINAL LAW—MURDER.— Upon the trial of an indictment for murder, it appeared that an affray had taken place, shortly before the killing, between the deceased and the defendant, in which the latter had been badly cut, but from the evidence there was a question whether deceased was not fired upon before he commenced to use his knife; and the Court excluded evidence of threats previously made by the deceased, that he intended to kill the defendant, on the ground that it did not appear that the threats were communicated to the defendant. *Held*, that upon the determination of the question, *by whom was the affray commenced?* may have depended the verdict of murder, instead of manslaughter, and that upon this question the evidence was admissible, as tending to show that the deceased attempted to fulfill his threat.

APPEAL from a judgment of conviction, and from an order denying a new trial, in the Superior Court of Kern County. BRUNDAGE, J.

The facts are stated in the opinion.

*R. E. Arick*, for Appellant.

*Attorney-General*, for Respondent.

McKINSTRY, J. :

At three o'clock in the morning of the 11th of October, defendant was in bed in the house of one Manuela Sanchez, in a room adjoining that of Manuela and her daughter. Deceased, having ridden a horse to a point about two hundred yards from the house, came to the outer door and (as would seem) demanded admittance, which was refused by the woman Manuela, alleged to have been at one time his mistress; whereupon—as claimed by defendant—deceased burst open the door, and at once leaped upon the defendant, who was still in bed, and commenced stabbing him with a knife. Defendant was badly cut in several places. The testimony for the prosecution, however, if unexplained, would leave it doubtful whether deceased was not fired upon before he commenced to use his knife. Thus, Cayetana Barrejon: "I saw deceased, Eugenio Morales, at a distance of seventy or eighty yards. He walked some distance and sat down. I heard the first shot in Manuela Sanchez's

house. I was in my room waiting on my child. I jumped out, and when I opened the door I heard a second shot. Four men jumped over the fence at Manuela's. They passed within four or five feet of me. They went to where deceased was, and commenced shooting," etc.

If defendant killed deceased, or was present, aiding, or abetting the killing, it was certainly important that the jury should be informed of the affray in the Sanchez house, and whether the defendant or deceased was there the assailant. If defendant was attacked by deceased, with a deadly weapon, when in bed in his own room, that circumstance was a very grave one to be considered when the jury were determining whether defendant had been provoked, and the degree of provocation, and whether sufficient time had elapsed for defendant's passion to cool. The defendant was found guilty of murder, and any evidence tending to prove that the original assault was by the deceased with a deadly weapon, had a bearing upon the question whether the offense was murder or manslaughter.

John Crawford, a witness for the defense, was asked, " State whether you ever had any conversation with deceased, relative to any difficulty that he had with defendant, when it was, and what was said, if anything?" Objected to. The Court—"Unless you can show that these threats were communicated to defendant, the testimony is not admissible."

Defendant, by his counsel, for the purpose of showing the intention of the deceased to attack the defendant, and to show the intent with which Morales resorted to the house of Manuela, and also his feelings toward defendant, offered to prove by John Crawford, a competent witness, then upon the witness stand, duly sworn as such, that prior to the difficulty between the defendant and Morales, the deceased made threats against the life of the defendant, stating that he " intended to kill defendant." Objected to, and the Court refused to permit the witness to testify, to which ruling of the Court the defendant then and there excepted.

This was error. In *People* v. *Arnold*, 15 Cal. 476, it was held, that when a rencounter occurs between two persons, one of whom is killed, and the circumstances are equivocal as to which one of the two commenced the affray, the fact that one of the

parties had previously procured a weapon for the avowed purpose of using it against the other—although the fact is not communicated to defendant—is a circumstance tending to show that the purpose was fulfilled. And the same doctrine in respect to threats not communicated to the party threatened is adopted in *People* v. *Scoggins*, 37 Cal. 676. In the case before us, deceased was not killed at the affray in the house—treating that as a separate affray—but the *threat* became an equally important circumstance, since upon the determination of the question, *by whom was that affray commenced*? may have depended the verdict of murder instead of manslaughter.

Judgment and order reversed, and cause remanded for a new trial.

Ross, J., and McKEE, J., concurred.