## COXWELL *vs.* THE STATE OF GEORGIA.

1. Where an indictment alleged that the defendants on a certain day, in the peace of the state then and there being, with certain pistols and shot-guns charged with powder and leaden shot, did then and there feloniously, wilfully and of their malice aforethought kill and murder the said Turner *alias* Awtrey, all of which was contrary to the laws of said state, the peace, good order and dignity thereof, such indictment was sufficient, though it did not allege that the killing-was unlawful.

2. Although after an injury is done there is no principle of law which will justify an act of individual satisfaction or vengeance, yet where

the line of defense to an indictment for murder was that a continuous feud had existed between the deceased and the defendant, that the latter had sought the protection of the law, but its operation had been avoided by the flight of deceased, and that he had returned, and by threats and otherwise had kept defendant in continual fear for his life, all of the facts connected with such feud, including its origin, were admissible, in order that the jury might fully understand the case.

3. The record of the trial and conviction of a principal in the first degree is conclusive evidence of his conviction and *prima facie* evidence of his guilt on the trial of a principal in the second degree, and the onus is on the defendant to show that the principal in the first degree should not have been convicted. But defendants indicted as principals in the first degree, where they sever, have no presumption against them by reason of the fact that two may have been convicted before the third is put upon his trial.

4. Good character may be of use in doubtful cases, but when the evidence is clear it can be of no avail.

5. While the court may so far restrain the prisoner's statement as to prevent his occupying the time of the court and jury with long, rambling and irrelevant matter, yet as to all matters connected with the case the prisoner may make such statement as he may think proper, and he should not be restricted to stating such facts as would be admissible in evidence.

Criminal law. Indictment. Evidence. Prisoner's statement. Practice in Superior Court. Before Judge POTTLE. Wilkes Superior Court. May Adjourned Term, 1880.

Reported in the decision.

F. H. & J. D. COLLEY; SIMS & SHUBRICK; S. H. HARDEMAN, for plaintiff in error.

CLIFFORD ANDERSON, attorney general; SEABORN REESE, solicitor general, for the state.

CRAWFORD, Justice.

John D. Coxwell, Ernest Walker, Newton Nichols and James Blackburn were indicted for the murder of John Turner *alias* John F. Awtrey in February, 1880. Walker

was tried and convicted, Nichols accepted a verdict of guilty with a recommendation to mercy, Blackburn became a witness for the state and was pardoned. Upon the trial of Coxwell, the plaintiff in error in this case, he was convicted, and made a motion for a new trial, which was refused, and he excepted.

The leading facts of the case are material to the clear understanding of the errors assigned, and as appears from the record, are about as follows: Turner was shot and killed on the 24th day of February, 1880, as he was passing along a path in the woods, about three-fourths of a mile from Coxwell's house. On the evening of the day before the homicide, the four persons charged were on this same path and with the view of meeting him. Not, however, seeing him, it was agreed, at the suggestion of the plaintiff in error, that to avoid any suspicion resting upon them by their spending the night with him, that Walker and Blackburn should stay at Barksdale's, and only Nichols should go with him. Before they parted, however, Coxwell pointed out the place of meeting and of ambush, to which they were to return early the next morning.

Walker and Blackburn repaired promptly to the appointed place and secreted themselves as directed. Coxwell excusing himself upon the ground of having some work done before he left, told Nichols that he had better go on and meet the others, as they might get tired and leave, and that he would be over soon. Just as Nichols was approaching the place where they were he saw Turner coming down the path, who also seeing him, turned upon him with an order to "halt," drawing his pistol and saying, with an oath, that "I'll fix you." At this moment Walker and Blackburn fired upon him from their hiding place, and thirty-eight shot took effect in his back and arm and one in his temple. The three parties then ran, Nichols returned to Coxwell, to whom he told what he knew, when they returned, found the dead body of Turner,

carried it to a swamp near by, and from which that night these four persons, in company with three others, carried it to another secret place, where it was buried in a gully and covered with straw, dirt and rocks, the latter of which weighed from five to thirty pounds.

About two months previous to the murder of Turner, Coxwell shot him twice, and then cut him as deeply as he could with his knife, and says that he would have killed him, but was prevented by his neighbors. Turner, soon after this, went over into South Carolina, where he remained about a month, and then returned with the intent, as claimed by Coxwell, to take his life, and of which he lived in continued fear. The cause of this attempt to slay Turner, and of the deadly feud between the parties, was excluded from the consideration of the jury. Thus we have a general outline of the important features of this case and may now proceed in their light to consider the errors assigned.

These, though very numerous, may be classified so as not only to reduce but to elucidate more clearly the legal questions involved.

1. The defendant demurred to the bill of indictment because it did not allege in the language of the Code that the killing was unlawful. Although this particular word is omitted in the indictment, yet it is alleged that these defendants, on a certain day, in the peace of the State then and there being, with certain pistols and shot-guns charged with powder and leaden shot, did then and there feloniously, wilfully and of their own malice aforethought kill and murder the said Turner *alias* Awtrey, all of which was contrary to the laws of said state, the peace, good order and dignity thereof.

Under the Code, §4628, the indictment is sufficiently technical and correct when it states the offense in the terms and language of the law, so plainly that it may be easily understood by the jury. This not only meets that requirement, but would also be good at common law.

Arch. Crim. Pr. and Pl., 784 and note 1 ; Black. Com. App., 445 ; 1 Blackf., 395.

After the demurrer was overruled the trial proceeded, and the accused relied for his defense upon the desperate character of the deceased for violence and blood ; that he had cause of a deadly feud with him ; that he, the accused, had failed to have the law enforced against deceased ; that said deceased, after absenting himself some weeks from the neighborhood, returned to it and sent him threatening messages ; that he lived in daily fear of losing his life, and that the death of the deceased was the only security for its preservation.

2. This being the theory and general line of defense, the plaintiff in error complains that the judge erred in excluding from the jury all evidence as to the attempted rape alleged to have been committed by Turner upon his daughter, as well as the consequences to which it led, involving as it did the origin, progress and culmination thereof in the homicide of the deceased. How far the defendant might have supported this theory by the proof is wholly conjectural, but the question is, did he have the right to submit to the jury these facts?

We recognize in its broadest sense the doctrine that *after* an injury has been consummated there is no principle of law which justifies an act of individual satisfaction or vengeance. If the law itself is not sufficiently punitive it should be made so, and not left to the moderation or the ferocity of the injured party to determine what shall be the measure of his redress.

Evidence of previous quarrels have always been held admissible unless they were separate and independent acts; but wherever they were *continuous* from the inception to the termination of a homicide, and unite the preceding with subsequent acts, thereby shedding light upon motive and explaining conduct, they are admissible. As to the exact effect that this testimony would have upon the jury, it is not for us to inquire. It was claimed that out of

this came a bloody rencounter; an appeal to the law by the defendant charging this felony upon the deceased and which he could not have executed; then deceased's flight from the state; his return with a design to slay the defendant, openly expressed; that he lurked around his house, which was thickly skirted with woods; that defendant feared to occupy the ordinary family chamber, but retired to an upper one for safety at twilight, and there remained until the morning; and thus he lived, besieged in his own house, in continued dread of assassination.   If these things can be shown, and *in direct connection* with the killing of the deceased, should they not be allowed to go to the jury that they might have *the whole case* before them?

But we are not to be understood as indicating in the slightest degree that such proof would be a justification of the assassination of the deceased by a conspiracy such as this record discloses.   Still, judges should send every fact relevant and pertinent to the issue to the jury, which is not expressly excluded by some rule of law.   For to them is confided, at last, the determination of the guilt or innocence of the accused when the facts are applied to the law.   The defendant sought an acquittal upon the ground that if the deceased were slain, as charged, that the facts, if allowed to go to the jury, would show that he was manifestly intending or endeavoring, by violence or surprise, to commit a felony upon him, and that whatsoever act might be shown against him that it was really in defense of his own person.   Again we repeat that *judges* are not empowered to decide what shall amount to a bare fear, neither are they to say what circumstances shall be deemed sufficient to excite the fears of a reasonable man, nor exactly what other instances stand upon the same footing of reason and justice as those which the law enumerates, nor yet what relevant facts may amount to sufficient evidence of an intent or endeavor to commit a felony, for if so allowed, and they are thus excluded, the verdict would be theirs and not the jury's.   These great rights of protec-

tion to life and liberty are lodged in the hands of *jurors*, to whom the country must look for its security against bloodshed and crime on the one side and the safety of the citizens on the other.

3. Another error complained of is that the judge charged the jury that the verdict of guilty against Nichols and Walker for the killing of Turner was only presumptive evidence against Coxwell, and the burden of proof was on him to show that they did not kill and murder him. If, therefore, that presumption had not been rebutted, then they must consider the fact established; and if the killing was the result of a common purpose previously formed on the part of Nichols, Walker and Coxwell, then Coxwell is as much guilty as either of them, though he was not present at the time of the killing, and they might find him guilty as principal in the first degree.

We cannot concur in this view of the law as taken by the judge below. The record of the trial and conviction of the principal in the first degree is conclusive evidence of his *conviction*, and *prima facie* evidence of *his guilt*, and on the trial of a principal in the second degree, the *onus* is on him to show that the principal in the first degree ought not to have been convicted. But principals in the first degree, where they sever, have no presumptions against them by reason of the fact that two may have been convicted before the third is put upon his trial. Even in cases of principals in the second degree and accessories, where presumptions are applicable, the rule only goes to the extent of being conclusive as to their *conviction*, and not as to their *guilt*. *7 Ga., 2; 63 Ib., 675.*

4. It is further alleged that the judge erred in instructing the jury that "good character may be of use in doubtful cases, but when the evidence is clear it can be of no avail." This charge follows the ruling in the case of *Epps vs. The State*, 19 *Ga.*, 102, and is re-affirmed in the case of *Thomas vs. The State*, in 59 *Ga.*, 784, and is therefore correct.

v 66—20

All the grounds of error not hereinbefore disposed of fall within these rulings, and are governed thereby, except that in which it is alleged that the judge interrupted the prisoner in his statement, and required that the same be made under the laws governing the admissibility of evidence.

5. This ruling brings us to a construction of the act providing for prisoners in all criminal cases the right to make to the court and jury a statement, not under oath, involving his or her defense. This privilege was for the first time granted in 1868, and confined to cases of felony only. In 1874 it was extended to all criminal trials, and so stands to-day. The judge confined the prisoner within the limits prescribed for witnesses. This does not meet the broad and liberal purpose which the legislature intended to accomplish. He is not allowed to come as *a witness;* he comes as *a prisoner*, charged with crime; he does not appear to give *testimony;* he appears to make *a statement*,—a right far higher than the narrow limits which confine and guard against hearsay and conclusions, and expressly forbids the admissibility from his own witness of that which the party himself may have uttered in his own behalf. In the exercise of this right he is authorized to make such statement in the case as *he may deem proper* in his defense. It was never contemplated that he should be embarrassed and circumscribed by the strict rules of law which control the admissibility of evidence. Nor, upon the other hand, should he be permitted to occupy the time of the court and jury with long rambling, irrelevant matter inapplicable to the case,—and which, of necessity, must always rest in the sound discretion of the judge.

This right granted to the prisoner is a modern innovation upon the criminal jurisprudence of the common law, advancing to a degree hitherto unknown the right of the prisoner *to give his own narrative* of the accusation against him to the jurors, who are permitted to believe it in pref-

erence to the sworn testimony of the witnesses. The law-making power having given this right of making his statement to the prisoner, and having authorized the jury to give it such force as they may think proper, makes it the duty of the judges to execute the same in its letter and spirit; they are charged with the constitutionality but not with the policy of a law. But it is said that the right to rebut the prisoner's statement virtually destroys the right of the court to control the admissibility of testimony, as he may exclude from the mouths of witnesses what the prisoner has the right to say. Our first reply to this is : *Ita lex scripta est ;* and our second is that this cannot occur except where the state, by its rebutting testimony, opens the door and thus makes admissible that which would be otherwise excluded.

Judgment reversed.