## VAUGHN v. THE STATE.

| 88 | 731 |
|---|---|
| 90 | 798 |
| 88 | 731 |
| 94 | 18 |

1. Though the formality of putting the panel upon him be not expressly waived, if, without informing the court he declines to waive it, the prisoner acquiesces in the omission and takes part in the selection of particular jurors from the panel, raising no question touching the failure to put the panel upon him until after the full traverse jury has been selected and sworn and the evidence in behalf of the State introduced, he will be deemed to have waived the formality by his silence and conduct.

| 88 | 731 |
|---|---|
| 95 | 349 |
| 88 | 731 |
| 99 | 685 |
| 88 | 731 |
| 101 | 519 |
| 88 | 731 |
| 105 | 490 |
| 88 | 731 |
| f112 | 873 |

2. In making his statement to the jury, as provided for by statute, the prisoner not being sworn as a witness, nor subject to cross-examination, nor restricted by the rules of evidence, he cannot lay the foundation for introducing evidence in his favor that would otherwise be inadmissible. Hence, uncommunicated threats will not be received unless they are relevant and competent unaided by the contents of the statement.

| 88 | 731 |
|---|---|
| f111 | 177 |
| 88 | 731 |
| 113 | 741 |
| 88 | 731 |
| 114 | 24 |
| f114 | 29 |
| 114 | 64 |
| 88 | 731 |
| 118 | 29 |
| 118 | 34 |

3. Where there is positive and uncontradicted evidence by several witnesses that the prisoner fired the first shot, a previous uncommunicated threat of the deceased that he would "do up" the prisoner is not admissible in evidence as tending to show that the deceased fired the first shot, there being no evidence that the deceased was armed.

| 88 | 731 |
|---|---|
| 120 | 165 |
| 88 | 731 |
| 123 | 162 |
| 88 | 731 |
| 124 | 453 |
| 88 | 731 |
| 125 | 137 |
| 126 | 555 |

4. The general tenor of the charge of the court on the trial of a criminal case should be shaped by the evidence alone and the law applicable thereto, adding, or at some stage of the charge incorporating, the statutory provisions touching the prisoner s statement, and in case of special request to charge on the statement, granting such request if the matter requested be appropriate. Taking the whole charge of the court together, there was no error committed in instructing the jury, nor in declining to instruct as requested. The charge was a clear, full, fair and correct exposition of the law applicable to the case.

| 88 | 731 |
|---|---|
| f130 | 408 |

5. That the court excluded evidence when it was first offered, is no cause for a new trial if the evidence was afterwards received.
6. The statute gives the prisoner no right to make more than one statement. Whether he should be allowed to supplement it with another is discretionary with the court.
7. There was no error in denying a new trial on any of the grounds stated in the motion.

February 15, 1892.

Criminal law. Practice. Jurors. Waiver. Prisoner's statement. Evidence. Charge of court. Before Judge MILLER. Bibb superior court. November term, 1890.

Vaughn was indicted for the murder of Bowers. He was convicted of voluntary manslaughter, and was sentenced to imprisonment for twenty years at hard labor in the penitentiary. He excepted to this sentence as cruel, unusual and unwarranted, considering the facts and circumstances of the case; and he also excepted to the overruling of his motion for a new trial. This motion contains many grounds, but it will be necessary to set out only those following, which, in connection with the facts stated in the opinion, sufficiently report the case :

1. When the defendant was called on to plead, he announced that he waived arraignment, and when the first panel of jurors was called, he announced that he waived the array. This panel was exhausted without obtaining the jury, and the second panel was called and the remainder of the jury selected therefrom, but this panel was not formally put upon the defendant, nor was he asked if he had any challenge to the array or whether he waived the same, nor was anything said relative to the second panel by the court or counsel for either side, defendant's counsel being furnished with a list of this second panel and proceeding to challenge without objection to the failure to formally put it on him. When the State closed its case, the defendant moved to be dis-

charged because the jury had been partly selected from the second panel without formally putting it on him and without his waiver of the same. The motion was overruled.

2, 3. The defendant offered to prove by one Holt that, between one and three hours before the homicide, Holt and Bowers had a conversation on the same street where the homicide occurred and within less than a hundred yards of the place, and that Bowers told Holt with an oath that he intended to do Vaughn up. Upon counsel stating that they did not expect to show that this threat had been communicated to the defendant before the homicide, the court ruled out the testimony. It was offered only to illustrate Bowers' state of mind and the probability that he made the attack as defendant claimed in his statement. Error is also assigned upon the ruling out of the answer of a witness to the question, "What difference was there in reference to the sound in the report of the pistol?" The answer was, "I do not know that I could describe the difference, but it seemed to me that the sound did not proceed from the same pistol."

4. The court charged that where the State proves the fact of the killing by the defendant, the law presumes that the killing was murder, and that it then becomes incumbent on the defendant to show to the jury by evidence, that it was either justifiable homicide or some grade of homicide below murder. The court also charged: "If you believe that, under the circumstances of the case, the fears of Vaughn were the fears of a reasonable man situated as he was, all that is for the jury to determine under the evidence and under the law of the case." Also, "The reasonable doubt that is spoken of . . should arise out of the case, either from the testimony in the case, or from the lack of testimony, or from a conflict of testimony." These instructions

were alleged as erroneous in excluding from the jury the prisoner's statement, it being contended that the attention of the jury should have been called thereto in connection with each of these charges, whereas they were restricted to the evidence, and had already been instructed that the prisoner's statement was not evidence.

5. Error in holding that when witness Rainey was on the stand, defendant could not ask him if he knew the general reputation and character of the deceased for violence and turbulence, and for raising a fight and quarrelling. This evidence was ruled out at that time, but was admitted later in the trial.

6. After defendant had closed, the State introduced in rebuttal the testimony of Orme, taken on the commitment trial, that Bowers had said to Vaughn, "Why did you bring some one with you?" Thereupon defendant asked to be allowed to make an additional statement to explain the circumstances under which he was accompanied on that occasion. The court refused to allow him to do so, on the ground that he had already made one supplemental statement.

DESSAU & BARTLETT, HARDEMAN, DAVIS & TURNER and W. B. WILLINGHAM, for plaintiff in error.

W. A. LITTLE, attorney-general, by J. H. LUMPKIN, and W. H. FELTON, JR., solicitor-general, *contra.*

BLECKLEY, Chief Justice.

1. In *Cochran* v. *The State*, 62 *Ga.* 731, counsel for the accused did not waive by acquiescence the statutory requirement that the panel should be put upon the accused, but gave express notice at the time that it was not waived, the language being, "We waive nothing." In the present case, the accused and his counsel acquiesced by silence in the omission to put the panel on him, took part in the selection of particular jurors from

the panel, raised at the time no question touching failure to put it upon him, and allowed the trial to proceed until all the evidence in behalf of the State had been introduced and the State had closed. Putting silence and conduct together, there can be no doubt that the waiver was complete and effective, if such a thing could be waived at all. And what cannot be waived? It has been said that the whole trial may be waived. LUMPKIN, J., in *Sarah* v. *The State*, 28 *Ga*. 581. There can be no doubt that minor matters, such as forms and ceremonials, in the course of the trial, whether prescribed by statute or not, may be waived. A right given by statute may be more certain, but is not more sacred, than one given by the common law. With respect to either, the accused is entitled to have it administered to him, unless he waives it. But if he does waive it, he suffers no injustice, after his waiver has been acted upon, if he is held to abide by it. Public policy seems to be the only limitation upon the power of the waiver, whether in criminal trials or anything else. Code, §10; *Logan* v. *The State*, 86 *Ga*. 266.

2. Assuming for the present that the uncommunicated threat made by the slain against the slayer was inadmissible as evidence for the latter, unless rendered admissible by his statement to the court and jury made at the trial in the exercise of the statutory privilege secured to him by section 4637 of the code, the question is, could the statement serve as a foundation for introducing the threat? The statement is not made under oath; the accused is not sworn as a witness; he is not subject to cross-examination without his consent. He is unrestricted by the rules of evidence, and may state any fact as to the condition of his own consciousness, or as to what he saw, heard or believed at the time of the homicide. *Coxwell* v. *The State*, 66 *Ga*. 309. Not even his general credibility is subject to attack. *Doyle*

.v. *The State*, 77 *Ga.* 513.   Is he entitled to corroborate his statement by evidence that would be wholly inadmissible for any other purpose ?   If so, the privilege of statement might be more valuable than that of testifying.   For the testimony of a witness can be adduced only upon terms of cross-examination, and subsequent corroboration may be largely discounted by what has been drawn out on cross-examination.   The statute is silent as to corroborating the mere statement of the accused, and while it allows the jury to believe it in preference to the sworn testimony, it seems to contemplate that the statement shall compete with sworn testimony single-handed, and not that it shall have the advantage of being reinforced by facts which do not weaken the sworn evidence otherwise than by strengthening the statement opposed to it.   If the accused, by electing what matter he will inject into his statement, could render this or that fact which lies outside both of the statement and the evidence, admissible when it would otherwise be inadmissible, his privilege would be not merely one of making a statement, but one of making evidence in his behalf out of that which was not evidence until he chose to give it an evidentiary stamp by introducing something into his statement to which it would be pertinent.   If he could do this, he might send the evidence spinning off through forensic space in any direction he might choose to give it.

3. The statement of the accused was to the effect that the deceased commenced the attack and fired the first shot.   Several eye-witnesses testified that the accused commenced the attack by firing the first shot himself, and there was no evidence to the contrary, and none that the deceased was armed.   Putting the statement out of question, there is nothing to contradict the witnesses who testified that the accused not only fired the first shot but all the shots that succeeded.   The uncom-

municated threat offered in evidence and excluded was, that, two or three hours before the homicide, the deceased said with an oath "that he intended to do Vaughn up." The purpose of offering this testimony, as announced at the time, was to illustrate the state of the speaker's mind and the probability that he made the attack as claimed by the accused. His state of mind needed no illustration, if there was no conduct on his part which put the accused in real or apparent danger. According to the evidence of the eye-witnesses, there was no such conduct, or if any, it was not until after the accused had commenced to shoot. This being so, the threat was no more pertinent in this case than was the threat sought to be proved in *Vann* v. *The State*, 83 *Ga.* 46. In *Vann's* case the eye-witnesses testified that White was walking away when Vann shot. In the present case, the parties were standing face to face in the public street, one of them armed with a pistol and the other, so far as appears, unarmed. Whether the first shot or a subsequent one inflicted the mortal wound, is not certain, but the evidence is uncontradicted that the first was fired by Vaughn. The holding in *Keener's* case, 18 *Ga.* 194, was that, when previous threats without any overt act are sought to be introduced by the defendant by way of justification, it must be shown that they had been communicated; *aliter*, if used merely to show the state of mind or feeling on the part of the deceased. In that case the threats were held admissible as tending to explain with what intent and feeling the deceased went to the brothel in which the homicide was committed, and there engaged in hostile demonstrations against Keener, who was in the bedroom of the woman for whose favors the two men were rivals. In the present case, the meeting was casual in the public street, and the threat was irrelevant for any purpose save the ultimate one indicated by the announcement when it was

v 88 47

offered, that is, to illustrate the probability that the deceased made the attack as claimed by the accused. · Were the ascertainment of the attacking party dependent upon mere probability, and not put out of question by the direct evidence, an uncommunicated threat, according to many authorities, would be admissible. Wiggins *v.* People, 93 U. S. 465 ; Stokes *v.* People, 53 N. Y. 166 ; People *v.* Scoggins, 37 Cal. 676, 1 Crim. Def. 596 ; People *v.* Alivtre, 55 Cal. 263. The subject of uncommunicated threats has been dealt with by this court in several cases besides those of *Keener* and *Vann.* See *Carr* v. *The State,* 14 *Ga.* 358; *Lingo* v. *The State,* 29 *Ga.* 470; *Hoye* v. *The State,* 39 *Ga.* 718; *Peterson* v. *The State,* 50 *Ga.* 142.

4. The jury trying a criminal case are sworn to give a true verdict according to evidence. It is important for them not to confound the prisoner's statement with the evidence or the evidence with the statement. The statute allows them to give the statement such force as they think proper, and even to believe it in preference to the sworn testimony. In charging them the court should keep the evidence distinct from the statement and shape the general tenor of the charge by the evidence alone and the law applicable to it. For if the court should mingle evidence and statement together, the jury might find it difficult to separate them and might fail to understand the import of the instructions delivered from the bench. At some stage of the charge the statutory provisions touching the statement ought to be made known to the jury, and this, as has frequently been suggested by this court, is usually enough to say touching the statement. The statute on that subject is so plain and explicit as to need no exposition or comment. If, however, a special request to charge on any matter of defence set up in the statement is made in writing, the request ought to be granted when the charge requested is applicable to the matter of the statement and ex-

pressed in appropriate terms. This is the best method of conducting the somewhat complicated and anomalous system of trial which prevails in this State in consequence of the statutory privilege of annexing unsworn statement to the sworn testimony. The statement may have the effect of explaining, supporting, weakening or overcoming the evidence, but still it is something different from the evidence, and to confound one with the other, either explicitly or implicitly, would be confusing and often misleading. The jury are to give the statement such force as they think proper. Its rightful force may be either against the prisoner or for him, or it may be entitled to none whatever. The jury are to deal with it on the plane of statement and not on the plane of evidence, and may derive from it such aid as they can in reaching the truth. The law fixes no value upon it; it is a legal blank. The jury may stamp it with such value as they think belongs to it.

We have carefully examined the charge given in this case, both as to the parts complained of and those not excepted to; and, reading all of it together, it was a full, fair, clear and correct exposition of the law applicable to the facts. There was no error in instructing the jury, or in declining to instruct as requested. In so far as the requests were sound, their substance was embraced in the charge as given. The time at our command will not suffice for discussing the many particulars, some of them very minute, involved in the objections made to the charge, and in the requests which were declined.

5, 6, 7. The other rulings made by this court in the case are left to stand upon the announcement of them contained in the head-notes; they seem to require no discussion or elaboration. As the accused was convicted of manslaughter only, he got at the hands of the jury all the mitigation which the most favorable view of the facts would justify.     *Judgment affirmed.*