## 815.　RICHARDSON *v.* THE STATE.

1. Although the length of *time* during which a tippling-house is kept open is immaterial, the *purpose* for which it is opened is relevant and material in determining whether the offense denounced by the statute has been committed, or whether the door of the saloon was opened for a necessary purpose justified by law and wholly innocent, because such opening is not connected, either by act or intention, with any violation of the law.
2. The privilege accorded a defendant in a criminal trial in this State, of making a statement to the jury, is an anomaly. The contents of the statement are not to be restricted or governed by the rules controlling the admissibility of evidence. "In all criminal trials the prisoner shall have the right to make to the court and jury such statement in the case as *he may deem proper* in his defense." Penal Code, § 1010. Though the court may prevent repetition of the same statements or debar the statement of circumstances wholly disconnected in *fact* with the facts upon which the defendant bases his defense, the statement of the defendant is not to be curtailed either by rulings or interruptions merely because the facts stated by the defendant and which constitute a part of his narrative of his connection with the case may, under the rules of evidence, be irrelevant and do not present *in law* a valid defense.

Accusation of keeping open tippling-house on Sunday, from city court of Richmond county—Judge Eve.　October 4, 1907.

Argued December 9,—Decided December 20, 1907.

*Austin Branch,* for plaintiff in error.

*J. C. C. Black Jr.,* solicitor, *John M. Graham,* contra.

RUSSELL, J.　The defendant was convicted of the offense of keeping open a tippling-house on the Sabbath day, and excepts to the order overruling his motion for new trial.　As plaintiff in error, he assigns error on certain instructions contained in the charge of the court, and on failure of the court to charge certain principles which he contended were material on the trial.　Error is also assigned on the ruling of the court in excluding § 149 of the city code of Augusta, with reference to dealers in intoxicating liquors; and on the action of the court in interrupting the defendant in his statement, and the refusal of the court to allow the defendant to state his understanding of the law, and his belief that he was acting legally.

1. The charge of the court alleged to be erroneous in the second ground of the motion for new trial was as follows: "I charge you that the offense of keeping open a tippling-house on the Sabbath day is complete whenever it appears that the house in question

was a tippling-house and that it was open on the Sabbath day. The law does not concern itself with the length of time during which it was open, nor the purpose for which it was open." The objection to the charge is that it entirely ignored and excluded from the consideration of the jury the question whether the purpose for which the defendant stated he entered his saloon, to wit, a momentary entrance for the purpose of putting out his lights, was one which the law would excuse or justify, and misled the jury into supposing that a mere entrance by the defendant into the saloon for any cause or purpose whatsoever would constitute an offense, whereas "an opening or keeping open" consists in having the house open for egress or ingress, or in allowing persons other than the proprietor or his agent to have access to the house.

We think the court too greatly restricted the purposes for which a saloon may be opened even on the Sabbath day. In so far as the time is concerned, no valid objection can be raised to the charge of the court, if the purpose of the opening was unnecessary. It has been repeatedly held that if a tippling-house be open or kept open even for a moment on the Sabbath day, it is a violation of the statute. *Monses* v. *State,* 78 *Ga.* 110; *Mohrman* v. *State,* 105 *Ga.* 712 (42 S. E. 143, 43 L. R. A. 398, 70 Am. St. R. 78); *Mc-Carly* v. *Atlanta,* 121 *Ga.* 366 (49 S. E. 287). We think, however, that the law, under some circumstances, justifies the opening of a house, used as a saloon on secular days, even on the Sabbath day, and that the judge should have presented the distinction between the lawful and the unlawful opening of such a house. The time during which it may be kept open is immaterial, if the opening be not for a proper purpose, and none the less immaterial if the opening of the house be necessary. In the early case of *Harvey* v. *State,* 65 *Ga.* 568, the court said: "If the door of the tippling-house was kept open on the Sabbath day, so that persons had ingress and egress thereto, and persons did go in and out on such days," the defendant was properly convicted. This is judicial recognition of the fact, by implication at least, that there may be some circumstances under which the door of a saloon may be open, other than for the purpose of ingress or egress, which would be justifiable or excusable in the eyes of the law. In *Sanders* v. *State,* 74 *Ga.* 82, the distinction is generally recognized, the court ruling that "Whenever it is shown that the house complained of is a tippling-house, that the

defendant is its owner, and that it has been kept open on the Sabbath day or Sabbath night, the charge is completely made out, and, *without more,* the jury ought to convict. If the house was opened and kept open against the owner's consent, express or implied, either by his clerk or some other person, or if it was opened for any cause or purpose which the law would justify or excuse, and if any of these facts be shown, the defendant would·be entitled to be acquitted." In the decision in the *Sanders* case, Judge Hall states the purpose of the act to be not only to close up such establishments on Sunday, in deference to the finer and better feelings of orderly and well-disposed people, but to remove this incitement to graver and more dangerous violations of the law; but holds that if the house is open for any cause or purpose which the law justifies or excuses, and any of these facts be shown, the defendant would be entitled to an acquittal, holding, at the same time, that the mere· invisibility of the proprietor would not establish a defense or cause one to be inferred.

In the *Seyden* case, 78 *Ga.* 105, the principle laid down in the *Sanders* case, supra, was recognized, and a request to give in° charge this principle was held to have been properly refused only because it was held to be inapplicable to the facts of the case then pending; and Judge Hall, again delivering the opinion, proceeds to give instances of some of the causes or purposes which, in law, would justify or excuse a defendant for opening a tippling-house on the Sabbath day. He proceeds to say, in the opinion, that "If fire should break out on the premises or in the vicinity, the proprietor would be justified in opening the house, to remove his goods to a place of safety; or if one on the spot or in the vicinity should be stricken down with unmistakable, dangerous, and sudden illness, requiring prompt treatment, and the house should be opened for the purpose of furnishing liquor as a remedy, and the liquor should be supplied in suitable quantities, then the act of opening the· house on Sunday would be excused. . . There was, however, nothing approaching such a case *in this instance.* . . The principle invoked by this request was inapplicable to the facts in proof, and the court properly declined to charge it." It can not with good reason be said that the instances given by the court in the *Seyden* case are exclusive of other like sufficient reasons. It is rather to be considered that the general principle that there are instances in

which the opening of a saloon on Sunday may be justified is announced. This view is enforced by the consideration that the strict construction of the statute which has uniformly been employed is wholly judicial; and if it is within the power of the courts to define, by general rule, the meaning of the term "keeping open a tippling-house," which is the definition of the offense, it is none the less within the power of the courts to provide reasonable exceptions to the rule. To show that the exceptions mentioned are not exclusive, we should think that one would be as excusable, and generally more justifiable, in opening his saloon if he detected a burglar in the act of robbing his cash-drawer, or a leak in his house damaging his goods, than in one of the instances mentioned by Judge Hall—that of supplying intoxicating liquor to one who supposedly, or perhaps feignedly, had been taken suddenly sick. If the owner saw the burglar or discovered the damages, the necessity at least would be *real;* whereas, in the case of one of the exceptions mentioned by Judge Hall, the necessity might be far more apparent than real.

The only definition of the offense of which this defendant is charged is judicial; for the Penal Code, §390, only declares that any person who shall be guilty of keeping open a tippling-house on the Sabbath day or Sabbath night shall be guilty of a misdemeanor. It is apparent from the language employed that the statute was originally aimed at the *keeping* open of houses where intoxicating liquors could be drunk on the Sabbath. This would be the meaning of the words in their ordinary significance. That the statute was directed to the character of the house (regardless of whether anything was sold or not) and to practices generally prevalent in such houses is obvious from the other houses included in the context. The strictness of judicial interpretation which has been applied in the later cases is based largely upon the suspicions, generally well grounded, that dealers in intoxicating liquors are not always over-zealous in their obedience of law, and that the courts should not be astute in shielding violators of the law by resorting to niceties of verbal criticism. It is a settled rule, however, in determining the binding force of precedents, that the older décision shall control; and we therefore not only base our construction of this statute upon what is plainly the ordinary meaning of the words employed, but upon authorities which must con-

trol until they are, in terms, disapproved and overruled. In every crime there must be the union or joint operation of act and intention or criminal negligence; and though the law presumes. the actor to have intended to do the very act which in fact he does, and that every act which is in itself unlawful was criminally intended, until the contrary appears, intent is ascertained by acts. and conduct. "Intention will be manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." Penal Code, §32. There can be no *keeping open* a tippling-house on Sunday which is innocent; because the law forbids it; and unless he who keeps it open is mentally irresponsible, the intention to violate the law will be conclusively presumed. The same would be true as to *opening* a tippling-house, if that were the language of the statute. But as the statute, as construed in the *Sanders* and *Seyden* cases, recognizes that there can be an opening without an intent to keep open, and as the statute does not make penal a temporary or absolutely necessary opening which is entirely disconnected with the purpose of tippling, it is a question for the jury whether such opening was in fact absolutely necessary for an innocent purpose disconnected with tippling, and with no intent of *keeping* the house open, or whether even an instantaneous opening, which might be the subject-matter of discovery and observation, is not a mere subterfuge for violation of the statute against keeping open the tippling-house.

We express no opinion on the evidence in this case, though it seems from the testimony that the lights that were to be put out were not extinguished. No reason suggests itself to our minds why two men were required to put out the light, nor why it was. impossible, even with two, to accomplish the object for which it is said it was necessary to enter the saloon. Nor do we hold that the mere economy in the cost of lighting, involved in a saving of the expense of the lights from Sunday morning to Sunday night, is in fact an act of necessity such as would justify opening a saloon on the Sabbath day for a purpose which could be accomplished at. no other time and which is wholly disconnected with the ordinary uses of the house. All of these are questions for the jury, in ascertaining whether the intent of the accused was to violate the law by keeping open a tippling-house, no matter for how short a time it was kept open, or whether the intent of the opening was to

do an act absolutely necessary and which could not be postponed, entirely disconnected from the use of the house for tippling purposes, not offensive to the refined feelings of well-behaved persons, nor otherwise violative of the public policy declared in the Penal Code, §390.  The fact that a saloon is kept open, though but for an instant, on the Sabbath day, if unexplained, will authorize a jury to convict—they will not err if they do convict; but the defendant has the right to explain, and then it is for the jury to decide whether urgent necessity and innocent intention justify the accused, or whether a hollow subterfuge, which the jury should not hesitate to spurn, is presented.  The Supreme Court of this State has recognized the fact that good faith plays some part in determining whether or not the intention to violate similar statutes is present in the mind of the accused.  In *Stern* v. *State,* 53 *Ga.* 299 (31 Am. R. 266), it was held that it would be a good defense that the saloon-keeper in good faith believed that the minor, whom he allowed to play billiards, was of full age; and the same principle was afterwards reaffirmed in the *Reich* case, 63 *Ga.* 619. So long as the State licenses the sale of liquor a licensed dealer in liquor is not an outlaw.  He is presumed to be innocent, and in the presumption of the law affecting his case he is entitled to the same right as other citizens.  The defendant was entitled to have submitted to the jury, for whatever it was worth, his defense that in opening his saloon (the opening not being denied) he was engaged in an act of necessity, which, as he believed, was justified by the circumstances.  Whether his defense was good or bad, whether it would be sustained by the jury or disregarded by them, was subject-matter for the determination of the jury.  But the charge of the court effectually withheld from the jury the only defense the defendant presented, and one which, as we hold, he was entitled to have the jury determine.

2. We think also that the judge erred in interrupting the defendant in his statement.  The defendant was proceeding to state to the jury that his license permitted him to enter his place of business between the hours of eleven o'clock at night and one hour before sunrise on Sunday, for the purpose of getting his mail or putting out his lights.  At this point the judge interrupted him by saying, in the presence of the jury, "You must not state what has been your custom in regard to entering your saloon, nor what

has been the custom of other saloon-keepers, or what your understanding of the law is. You must confine yourself to matters which are legally pertinent to the issue." In this ruling we think that the trial judge wholly exceeded his authority; and in the concluding portion of his remarks he laid down a rule which has more than once been expressly disapproved by the Supreme Court. The statement of a defendant in a criminal case in Georgia is an anomaly. It may be either what Judge Trippe held it to be, a poor privilege; or it may be, as held by Judge Bleckley, a right more valuable in some instances than the privilege of testifying. But in any event it is not controlled by any of the rules of evidence, and the defendant is not confined, as he was by the judge in this case, "to matters which are legally pertinent to the issue." *Coxwell* v. *State,* 66 *Ga.* 309, in which it was held, in a case where the judge restrained the prisoner's statement after the defendant had occupied more than two hours in a rambling narrative, that while the court may so far restrain a prisoner's statement as to prevent his occupying the time of the court and jury with long, rambling, and irrelevant matter, yet, as to all matters connected with the case, the prisoner may make such statement as he may think proper, and he should not be restrained to stating such facts as would be admissible in evidence. In the *Coxwell* case Judge Pottle interrupted the prisoner and required, as Judge Eve did in this case, that the same be made under the rules governing the admissibility of evidence. In passing upon this point in the case Judge Crawford, delivering the opinion, says: "The judge confined the prisoner within the limits prescribed for witnesses. This does not meet the broad and liberal purpose which the legislature intended to accomplish. He is not allowed to come as a *witness;* he comes as a *prisoner,* charged with crime; he does not appear to give *testimony;* he appears to make a *statement,*—a right far higher than the narrow limits which confine and guard against hearsay and conclusions, and expressly forbids the admissibility from his own witness of that which the party himself may have uttered in his own behalf. In the exercise of this right he is authorized to make such statement in the case as *he may deem proper* in his defense. It was never contemplated that he should be embarrassed and circumscribed by the strict rules of law which control the admissibility of evidence. Nor, upon the other hand, should he be

permitted to occupy the time of the court and jury with long, rambling, irrelevant matter inapplicable to the case,—and which, of necessity, must always rest in the sound discretion of the judge. This right granted to the prisoner is a modern innovation upon the criminal jurisprudence of the common law, advancing to a degree hitherto unknown the right of the prisoner *to give his own narrative* of the accusation against him to the jurors, who are permitted to believe it in preference to the sworn testimony of the witnesses. The lawmaking power having given the right of making his statement to the prisoner, and having authorized the jury to give it such force as they may think proper, makes it the duty of the judge to execute the same in its letter and spirit; they are charged with the constitutionality but not with the policy of a law. But it is said that the right to rebut the prisoner's statement virtually destroys the right of the court to control the admissibility of testimony, as he may exclude from the mouths of witnesses what the prisoner has the right to say. Our first reply to this is: Ita lex scripta est."

The case of *Montross* v. *State,* 72 *Ga* 261 (53 Am. R. 840), is cited by counsel for the State as authority contrary to the principles announced in the *Coxwell* case. We do not so construe the ruling of the court in the *Montross* case. Montross purposely had himself indicted in order to test the law against prohibiting the publication of a paper of a certain character. He endeavored to exhibit to the jury, as a part of his statement, numbers of pictures and illustrations improper to be exhibited anywhere, and in no way affording him any justification, except by showing that others indulged in such publications. Clearly the ruling of the court in the *Montross* case was within the terms of the decisions which allow the courts to restrain statements inapplicable to the case, not because they were inapplicable in law (because the ruling in the *Coxwell* case has never been modified) but were inapplicable in fact—entirely disconnected in fact—with any act with which the prosecution was concerned. In several subsequent decisions it has been ruled that the defendant could not make profert to the jury of documentary evidence as a part of his statement, without at least forfeiting his right to the opening and conclusion. But the decisions upon this subject do not affect the ruling in the *Coxwell* case. In *Vaughn* v. *State,* 88 *Ga.* 735 (16 S. E. 64), Chief Justice

Bleckley discussed the decision in the *Coxwell* case, and, construing it, says: "The statement is not made under oath; the accused is not sworn as a witness; he is not subject to cross-examination without his consent. He is unrestricted by the rules of evidence, and may state any fact as to the condition of his own consciousness or as to what he saw, heard, or believed at the time of the homicide." If that be the true construction of the statute, what would prevent Richardson from telling the jury that he believed from his license that he had the right to open his saloon for the purpose for which he stated that he did open it? The argument is made by State's counsel that the reason that he proposed to give would have been wholly irrelevant to the issue, and would have presented no defense. If this be granted, it was a statement as to his mental consciousness, connected with the act in question, and the letter of the law permitted him to state it to the jury. It matters not that it may appear anomalous that a defendant can state that which is irrelevant and which in law may offer him no just ground of defense. And yet we think that the statute is not without good reason for allowing the defendant to state any matter which he may think proper, provided it has some bearing in fact on the case. Facts and circumstances wholly disconnected with any legal defense which might merely appeal to the sympathy of the jury and offer no reason for an acquittal might cause a defendant indicted for murder to be recommended to life imprisonment rather than to be subjected to capital punishment. Or they might cause the defendant to be recommended to be punished as for a misdemeanor in a case where otherwise punishment would be inflicted as for a felony. Or in a case of doubt of the credibility of the State's testimony—the jury having no less right to consider the appearance and credibility of the defendant than they have the appearance of the witnesses, the statement of the defendant, his manner of stating, and the apparent candor of reasons he might present as to the motives that influenced the witnesses, even though he should neglect or overlook reference to the main charge, and though some of his statements under the rules of evidence might be objectionable as conclusions or hearsay, might create and justify such reasonable doubt of the defendant's guilt as would authorize an acquittal. The remaining assignments of error, dependent upon the exclusion of testimony or on alleged errors in the charge of the court, are so closely re-

lated to the subjects already discussed that we deem it unnecessary to consider them. In view of what has been said, any errors of which complaint is made in the pending bill of exceptions will doubtless be corrected in the new trial, which we feel constrained to grant. *Judgment reversed.*

POWELL, J., dissenting. In the light of repeated rulings of the Supreme Court, to which not only must I give full faith and credit as a judge but to which I give full personal assent, I dissent, quoties toties, from all that is decided by the majority of the court, except only that I think the court should not have interfered with the defendant's statement; but as to this the error is harmless, for when the defendant admitted he opened the saloon, he in effect pleaded guilty, and any reason he might have had could not affect his guilt or innocence, but only the measure of his punishment, and that was solely a question for the judge. The decisions cited by the majority have been subsequently considered and explained by the Supreme Court, and it is now the declared law of this State that there is *no* excuse for opening a tippling-house on the Sabbath day. See *Monses* v. *State,* 78 *Ga.* 110; *Klug* v. *State,* 77 *Ga.* 734.