## 7481. MULLIGAN v. THE STATE.

1. Under the evidence of a witness for the State, the law of voluntary manslaughter was applicable in this case.

2. It is not error for the court in a criminal case to instruct the jury: "You are to find the facts solely from the testimony submitted on the the trial of the case. . . The charge of the court is the means, and the only means, by which you are to know the law of the case, just as the testimony put before you is the means, and the only means, by which you are to know the facts of the case. . . After receiving the law from the court and finding the facts from the testimony submitted on the trial of the case, you are to judge of them and say what the verdict ought to be, considering what the law is and what the facts are. . . You are not authorized to go outside of the testimony submitted on the trial of this case to find the facts of the case." The court charged the presumption of innocence and the statute allowing the accused to make a statement at the trial.

3. An instruction to the jury that "a reasonable doubt is one that grows out of the testimony and leaves a reasonable mind wavering and unsettled, not satisfied from the evidence," does not restrict the jury to doubts growing out of the evidence, but includes a reasonable doubt arising from a want of testimony as well as a reasonable doubt based upon conflicts in the evidence and the credibility of the witnesses, and, when considered with the charge on the prisoner's statement, is not subject to objection.

4. The fact that the presiding judge stated in his charge, "in two separate and distinct places," the language or substance of the indictment did not unduly emphasize the contentions of the State to the prejudice of the prisoner.

5. On the trial of one accused of murder an instruction that "the burden . . is successfully carried if circumstances showing a justification arise out of the evidence introduced by the State against the defendant, or from any testimony submitted on the trial of the case," is not subject to the criticism that the court thereby excluded from the consideration of the jury the force and effect to be given to the pris-

oner's statement, the court having fully and fairly charged on that subject.

6. There was no error in the charge on the presumption of malice and the burden arising "when the State clearly establishes the killing as charged."

7. An instruction that "under this bill of indictment the question of manslaughter may or may not be involved" is inapt, but is not reversible error. If, in the light of the evidence, the facts and circumstances of the case require a charge upon voluntary manslaughter, the court should charge the jury on the law applicable to that grade of homicide.

8. That the court stated the substance of the indictment and instructed the jury, "If you fail to find these facts to be sustained," etc., is not objectionable in that the presiding judge did not reiterate the facts the court referred to.

9. Under the facts of this case there was no reversible error in the following charge: "The defendant says that what he did in this rencounter, he did it to defend himself against an unlawful attack made upon him by the deceased, William Lee Jett, at the time in question."

10. Taking into consideration the contention of the State and the statement of the accused, the court did not err in limiting the doctrine of self-defense to a finding on the part of the jury that "the deceased was the aggressor."

11. It was not error for the court, in permitting a witness to be asked leading questions, to reply to counsel's objection: "It is a matter of discretion. We want the truth of the matter." This was simply a statement of law, and did not prejudice the rights of the accused.

12. It is not error to admit testimony of the sheriff, who made the arrest soon after the homicide, that the accused was drinking at the time of the arrest.

13. The order in which the court gave the forms for the verdict is not subject to the exception taken.

14. The venue of the homicide was established beyond a reasonable doubt.

15. On the trial of one for murder, where the evidence, or the defendant's statement at the trial, would authorize the jury to find that the person killing acted in self-defense, on account of a reasonable fear aroused in his mind by words, threats, or menaces, in connection with the other facts in the case, it is not error for the court, in charging the jury on the law of voluntary manslaughter as contained in the Penal Code, § 65, to fail or refuse to charge, in immediate connection therewith, as to the right of the jury to consider words, threats, or menaces, in determining whether the circumstances attending the homicide were such as to justify the fears of a reasonable man that his life was in imminent danger or that a felony was about to be committed upon his person. Nor is the failure of the judge to give such qualifying instructions in any other portion of his charge erroneous solely for the reason that he gave in charge the law of voluntary manslaughter in the language of the Penal Code (1910), § 65.

DECIDED JULY 19, 1916.

Indictment for murder; from Polk superior court—Judge Bartlett.    April 25, 1916.

*Irwin & Tison, W. W. Mundy, W. M. Johnson,* for plaintiff in error.    *J. R. Hutcheson,* solicitor-general, *I. F. Mundy,* contra.

HODGES, J.    James Mulligan pleaded not guilty to an indictment charging the murder of William Lee Jett, and the jury found him guilty of voluntary manslaughter.    It appears, from the evidence, that the killing took place at what is known as the "Calhoun place" in Polk county; that the accused was the father-in-law of the deceased, and that they were living in the same home, but were not on speaking terms.    Just before the homicide the accused was in the house, singing a song, when the deceased came in the room and said to him, "I reckon you mean that for me," and thereupon cursed.    The accused got up with a knife in his hand, the deceased opened his knife and started toward the accused, and the accused met the advance, and they were separated by the wife of the deceased, the daughter of the accused; the deceased left the room, and the accused walked toward the door of the room.    Alonzo Jett, son of the deceased and grandson of the accused, testified:    "The next time I saw my father he walked around to the wood-pile and picked up the ax and came back to the kitchen door.    My grandfather was standing there by the fire, and papa walked up and had the ax on his shoulder and drawed it back to hit grandpa, and grandpa jerked his gun out, and I grabbed the gun."    Then the accused fired his gun and killed Jett.    P. B. Bishop, a neighbor, testified that he heard a racket over at Jett's house and looked and saw Jett standing right in front of the door of the house; did not see the accused, but heard the accused threaten to kill Jett, and immediately thereafter the pistol fired. The accused was not standing in the door, but seemed to be inside the house, and Jett was standing away from the door about a foot and a half.    Jett did not have the ax in his hand, and the witness did not hear Jett say anything just before the shooting.    When the witness went to Jett's house he saw the ax near where the body of Jett fell.

The accused stated that he was standing by the fireplace singing a song, when his son-in-law came in and said, "You are meaning that for me," and about that time the wife of the deceased and Alzonzo Jett came in and ran between the deceased and accused,

and they pushed the accused toward the door, and the deceased jumped out of the door; that he (the accused) stepped about three steps inside the house and that the deceased drew an ax on him and said, "I am going to split your brains out;" that he thought his life was in danger, and he fired the pistol and killed the deceased.

1. On the trial of one accused of murder, if the evidence, in any view, tends to show mutual combat on the part of the accused and the deceased, or a mutual intention to fight, it authorizes a charge on the law of voluntary manslaughter, and it is the duty of the court so to charge. In this case there was some evidence which, if believed, tended to show a mutual intention to fight, and there were some circumstances tending to show such intention, and it devolved upon the court, as a matter of duty, to give to the jury proper instructions covering the law of voluntary manslaughter. *Smith* v. *State*, 10 *Ga. App*. 840 (74 S. E. 447); *Land* v. *State*, 11 *Ga. App*. 761 (76 S. E. 78).

2. The following excerpts from the instructions of the court to the jury are excepted to: "You are to find the facts solely from the testimony submitted on the trial of the case. . . That [the charge of the court] is the means, and the only means, by which you are to know the law of the case, just as the testimony put before you is the means, and the only means, by which you are to know the facts of the case. . . After receiving the law from the court and finding the facts from the testimony submitted on the trial of the case, you are to judge of them and say what the verdict ought to be, considering what the law is and what the facts are. . . You are not authorized to go outside of the testimony submitted on the trial of this case to find the facts of the case." The exceptions taken to these excerpts of the charge are not meritorious. These excerpts did not exclude from the consideration of the jury the statement of the defendant, as it is not necessary that the court should instruct the jury that they should find the facts from the testimony and the defendant's statement. The instructions did not limit the jury solely to the testimony of the witnesses on the stand, and did not exclude in any way a consideration of the defendant's statement. It would be an invasion of the province of the jury for the trial judge to instruct them that they must consider the defendant's statement with the evidence adduced upon

the trial of the case. The statement of the defendant is not evidence. If the court gives in charge to the jury our peculiar statute conferring upon the accused a right to make to the court and jury such statement as he deems proper in his defense, no further instruction on that subject is required by law. The presiding judge gave to the jury this statute, and correctly and properly instructed them on the doctrine of reasonable doubt, and the presumption of the prisoner's innocence. The jury, under the law, can give to the defendant's statement such weight, force, and credit as it deems proper, and, the judge having correctly instructed them upon this right, the right of the accused to have his statement considered was in no way prejudiced by the charge of the court. *Vaughn* v. *State,* 88 *Ga.* 731, 738 (16 S. E. 64) ; *Bragg* v. *State,* 15 *Ga. App.* 623 (4), 627 (84 S. E. 82).

3. It is true that a reasonable doubt may arise out of the testimony adduced upon the trial of a case, or the want of testimony on the trial of a case, but when the judge tells the jury in his instructions that a reasonable doubt is one that arises out of the testimony and leaves a reasonable mind wavering and unsettled and "not satisfied from the evidence," that covers and includes any reasonable doubt that may grow out of the evidence adduced upon the trial of the case or a want of evidence in the trial of the case. The charge instructed the jury that if they were not satisfied from the evidence, that is to say the evidence as adduced, they should acquit, and it conveyed the idea that if the jury, from a consideration of the evidence, found it insufficient, and a reasonable doubt arose from such insufficiency, it would be the duty of the jury to acquit. The term "not satisfied from the evidence" instructed the jury to weigh the evidence and see if the evidence was sufficient to convict. If a reasonable doubt arose from a consideration of the evidence as adduced or if the jury were not satisfied on account of the insufficiency of evidence of the guilt of the accused, it was the duty of the jury to acquit. There is no merit in the exception taken.

4. The indictment and the plea of not guilty form the pleadings in a criminal case, and the fact that the court "in two separate and distinct places" stated the substance and words of the indictment to the jury could not emphasize the contentions of the State to the prejudice of the accused any more than a charge stat-

ing in separate and distinct places that the accused had pleaded not guilty would prejudice the rights of the State and emphasize the contentions of the accused. The bill of indictment and the plea are not evidence, and the court charging on different phases of the case on the trial of a homicide must necessarily state, and perchance reiterate, the substance and words of the charge preferred by the grand jury.

5, 6. As stated, the court fully and fairly submitted to the jury the law covering and controlling the right of the accused to make a statement at the trial; and the charge that "the burden . . is successfully carried if circumstances showing a justification arise out of the evidence introduced by the State against the defendant, or from any testimony submitted on the trial of this case," is not subject to the criticism that it withdrew from the jury a consideration of the defendant's statement. There was no error in the charge that "where the State clearly establishes the killing as charged,—that is, clearly establishes that the defendant did the killing,—the law presumes malice." This charge meant (and the jury must have so understood) that when the State clearly established the killing as charged in the indictment, the presumption of malice and the burden incident thereto arose.

7. If, in the light of any of the evidence, the accused might be guilty of voluntary manslaughter, it is the duty of the court to charge the jury on the law applicable to that grade of homicide, and an instruction that "under this bill of indictment the question of voluntary manslaughter may or may not be involved" is not proper. It is the duty of the trial judge to apply the law governing the case to the facts and circumstances shown by the evidence adduced upon the trial of the case, and this instruction was calculated to impress the jury with the idea that it was discretionary with them to determine whether or not the law of voluntary manslaughter could be applied to the case.

8. After stating the substance of the indictment, the court instructed the jury: "If you fail to find these facts to be sustained and established by the evidence beyond a reasonable doubt, you would find the defendant not guilty." This instruction is not subject to criticism on the ground that the judge did not enumerate these facts as alleged in the bill of indictment. He gave the substance of the contentions of the State, as set out in the bill of

indictment, and instructed the jury that if the contentions of the State were the truth of the case, the accused was guilty, but if they failed to find these facts sustained they would find the accused not guilty of murder; and this court is of the opinion that there was no error in his failure to reiterate the facts set out in the indictment. See *Faison* v. *State*, 13 *Ga. App.* 180 (79 S. E. 39).

9. In charging upon the defendant's statement the court used the following language: "The defendant says that what he did in this rencounter, he did it to defend himself against an unlawful attack made upon him by the deceased, William Lee Jett, at the time in question." This charge was excepted to as being an expression of opinion on the facts in the case. "Rencounter" is derived from the French word "rencontre," which means a meeting. The Standard Dictionary defines this word, when used as a noun (as it was in this case), as follows: " (1) A sudden hostile collision, as with an enemy; (2) an unexpected encounter or meeting, as of travelers; (3) a contest or debate." And Black's Law Dictionary defines it as " a sudden meeting, as opposed to a duel, which is deliberate." The evidence and the defendant's statement at the trial showed clearly and indisputably that after a casual meeting between the defendant and the deceased, a sudden and unexpected difficulty arose between them. Under such circumstances, the judge, by using the word "rencounter" in his charge, did not intimate or express an opinion that there had been a "mutual combat" between the parties. If any opinion was intimated, it was merely (and we think must have been so understood by the jury) that some kind of a "difficulty" or "fight" had arisen between the parties; and as the defendant himself, in his statement to the jury, used, in connection with this difficulty, the word "fight" and the word "racket," and as the fact that they had a difficulty was not disputed and was not an issue in the case, we do not think this charge requires a new trial. In our opinion, the average juror would interpret the word "rencounter" as having substantially the same meaning as the word "difficulty," or the word "fight," or the word "encounter," and would not perceive in it any other or different shade of meaning, or infer that it meant "a mutual fight," or "a mutual combat."

10. The accused, by his contentions and statement, insisted that the deceased was the aggressor, and, taking into considera-

tion the contentions of the State, and the statement on the part of the accused that he acted in self-defense in repelling an attack made upon him, or about to be made upon him, by the accused, the court did not err in limiting the doctrine of self-defense to the contention of the accused that "the deceased was the aggressor."

11. The court, in the exercise of its discretion, permitted counsel to lead a witness, and in ruling upon the objection of counsel for the defendant thereto, the judge said: "It is a matter of discretion. We want the truth of the matter." This was a statement of law, and was made in reply to the objection of the defendant's counsel, and did not in any way prejudice the rights of the accused.

12. Immediately after the homicide the accused left the place of the killing, and he was arrested soon thereafter by a deputy sheriff. The officer testified that at the time of the arrest the accused was under the influence of an intoxicant, and the court permitted this evidence to go to the jury. This was not error, when considered in connection with the other facts and circumstances of the case.

13. There is no rule of law providing for the order in which the court shall give to the jury, on the trial of one charged with murder, the forms of a verdict. While it is true that it is the usual and ordinary method to give in succession the forms for murder, voluntary manslaughter, involuntary manslaughter, and for acquittal, it does not necessarily follow that changing the order, in the giving of the forms of the verdict, would in any way prejudice the rights of the accused. The court gave to the jury the form of the verdict finding the accused guilty; the form finding him guilty and recommending him to the mercy of the court; the form not guilty, and the form finding him guilty of voluntary manslaughter. It does not appear that the change from the ordinary practice in this respect affected the rights of the accused.

14. It was contended that the venue of the homicide was not established. There is no merit in this exception. The evidence and the statement of the accused established beyond a reasonable doubt that the homicide occurred at the "Calhoun place" in Polk county.

15. The court charged the jury that "provocation by words, threats, menaces, or contemptuous gestures shall in no case be

sufficient to free the person killing from the guilt and crime of murder." This was not erroneous for the reason that the court did not in the same connection, or elsewhere, qualify it by instructing the jury that they might consider whether or not the words, threats, menaces, or contemptuous gestures were sufficient, under the circumstances surrounding the shooting, to arouse a reasonable fear on the part of the accused that his life was in danger, and that he shot while under the influence of that fear. The question raised by the exception to this instruction was certified by this court to the Supreme Court and decided by that court as here ruled. *Deal* v. *State,* 145 *Ga.* 33 (88 S. E. 573) ; s. c. 18 *Ga. App.* 70 (88 S. E. 902).                    *Judgment affirmed.*