## BROWN *v*. THE STATE.

The evidence authorized the verdict, which has the approval of the trial judge. The special assignments of error examined, and held not to show cause for reversal.

No. 804.    JULY 11, 1918.

Indictment for murder. Before Judge Terrell. Carroll superior court. December 3, 1917.

*Smith & Spradlin* and *Willis Smith,* for plaintiff in error.

*Clifford Walker, attorney-general, C. E. Roop, solicitor-general,* and *M. C. Bennet,* contra.

GEORGE, J. Jim Brown was convicted of the offense of murder, and, upon recommendation of the jury, was sentenced to life imprisonment. He moved for a new trial, which was refused him, and he excepted. For the State, the evidence tended to show that the accused had been drawn, under the act of Congress, known as the selective draft law, for service in the army of the United States. He did not wish to serve, and, a short while before the homicide for which he was indicted and convicted, he inquired of a witness whether one could escape military service by committing an offense against the laws of the State. The witness expressed the view that if one should commit a serious offense he might escape, and the accused replied, "I believe I will get me a negro." On the night of the homicide, the accused went to the home of the deceased. He broke the glass from the windows with a scantling. He called aloud, "God damn it, the Germans have come; get out of there." He went to the "chicken-house" and killed some of the chickens. He went into the dwelling-house, from which all the occupants had fled except the deceased, a seven-year-old boy, and dragged the boy by the feet out the back door and around the house. While the boy was lying on the ground, calling to his aged grandfather, the accused hit him on the head with his hand and fist. Later the accused went again into the house, set the bedding on fire, and then went away. Soon thereafter, the boy was found dead in the yard, with blood oozing from his mouth and ears. His head was lying near a rock and his skull was crushed. The accused was about 24 years old, and weighed about 175 pounds. He was drunk or drinking whisky on the afternoon before the homicide, and a witness saw him "stagger" in the yard at the time of the homicide. The accused filed a general plea of not

guilty, but did not make a statement. The evidence offered by him was confined solely to the question of his sanity at the time of the commission of the homicide.

It is contended that this case depended entirely upon circumstantial evidence, and that the failure of the judge to charge the jury the law applicable to such evidence was error. There was no request to so charge. We have examined the evidence, some of which is set out above, and in our opinion the case did not depend entirely upon circumstantial evidence.

Error is assigned upon the following charge: "Now, gentlemen, the defendant in this case sets up that he is not guilty of murder. He sets up that he is not guilty of involuntary manslaughter in the commission of an unlawful act. He sets up that he is guilty of nothing. He sets up that at the time of the killing of the deceased, at the time of the homicide, if the evidence shows that the deceased was killed, that he was not a person of sound memory and discretion." It is insisted that the judge should have stated, in connection with this charge, that the defendant also set up that he did not kill the deceased; and that the charge, as it stands, amounts to an expression of opinion that the defendant killed the deceased. The charge is not subject to the criticism.

The court charged the jury that if the evidence showed that the defendant killed the deceased and "that the killing was the result of voluntary drunkenness alone," the law would not excuse the defendant. It is insisted that this charge failed to give the defendant the benefit of his contention that his mind was so diseased that he was not responsible for drunkenness, if the evidence showed that he was drunk. The court's statement of the law is correct; and when it is considered in connection with the full charge upon insanity as an excuse for crime, a portion of which is set forth above, it is not subject to the criticism urged against it.

Error is assigned upon the incompleteness of the following charge: "The law presumes, gentlemen, all persons to be of sound mind and memory; and the burden is upon the accused to rebut this presumption by a preponderance of the evidence, but not beyond a reasonable doubt." Plaintiff in error contends that the following should have been given in connection with the quoted excerpt: "But I charge you, if you entertain a doubt on the whole showing, including the question of insanity, you should

give the benefit of that doubt to the accused and acquit him." It is said that the failure to so charge deprived the defendant of the benefit of reasonable doubt given him by the law upon the question of intent. There is no merit in this assignment of error. Elsewhere in his charge the judge instructed the jury that they should not convict the defendant unless the State had proved all the material allegations of the indictment and beyond a reasonable doubt, and that the existence of and the ability to form a criminal intent was a material element in the case. At the conclusion of the charge on the defense of insanity, the court cautioned the jury as follows: "The guilt of the defendant should be made plainly and manifestly to appear beyond a reasonable doubt."

The court permitted a witness to testify, over the objection that she was incompetent on account of her age. This ruling is assigned as error, but the assignment is not complete. It does not set forth the age of the witness, nor any of the preliminary questions and answers necessary to a determination of the question sought to be made. The competency of the witness was a question for the trial court, and, in the absence of any showing to the contrary, we presume the court's discretion in this respect was judiciously exercised.

Complaint is also made of the refusal of the court to allow counsel for movant to ask of a witness a stated hypothetical question. It appears that the court later on in the trial permitted the witness to answer the precise question, and this evidence went to the jury. The error, if any, in at first declining to admit the evidence, was cured by its subsequent admission.

The court was asked to declare a mistrial on account of the following language of the solicitor-general used in his argument to the jury: "The humble home of the little negro and the blood is crying out for vengeance." The court, in the presence of the jury, immediately pronounced the argument improper, directed the solicitor-general to confine himself to the evidence, and instructed the jury "not to consider that part of the argument." In these circumstances we are not prepared to say that the refusal of the court to declare a mistrial was erroneous.

None of the other assignments of error require special reference.

*Judgment affirmed. All the Justices concur, except Atkinson, J., dissenting.*