## PRATER *v.* THE STATE.

1. The trial judge committed no error in failing to give in charge to the jury section 73 of the Penal Code.
2. The privilege of making a statement to the jury, accorded to a defendant in a criminal trial in this State, is an anomaly. The contents of the statement are not to be restricted or governed by the rules controlling the admissibility of evidence. "In all criminal trials the prisoner shall have the right to make to the court and jury such statement in the case as *he may deem proper in his defense.*" Though the court may prevent repetition of the same statements or debar the statement of circumstances wholly disconnected with the transaction which is the basis of the crime with which the defendant stands accused, still, as to the statement of facts which are connected with such transaction and as explanatory of the motives and conduct of the accused, or as illustrative of his mental condition, the statement of the defendant can not be withdrawn from the jury, or curtailed either by rulings or interruptions, merely because the facts stated by the defendant and which constitute a part of his narrative of his connection with the case may, under the rules of evidence, be irrelevant and do not present in law a valid defense.

3. The fourth special ground of the motion for a new trial can not be considered.

4. A proper foundation was laid for the admission of testimony as to a conversation with the deceased immediately after the shooting.

No. 4456. MARCH 12, 1925.

Murder. Before Judge Searcy. Upson superior court. June 18, 1924.

Paul Prater was indicted for the murder of George Holloway, and was convicted. He moved for a new trial; his motion was over-ruled, and he excepted. In addition to the usual three general grounds of the motion, the defendant assigned the following as reasons why a new trial should be granted:

(1) That the court erred in not giving in charge to the jury section 73 of the Penal Code of 1910, in connection with the law of voluntary manslaughter as applicable to the law of mutual com-bat, for the alleged reason that the defendant's statement and the evidence showed that the deceased and his brother were the ag-gressors in the difficulty, that the deceased was advancing upon the defendant with a knife, and that one of the brothers of the de-ceased struck the defendant over the head with a gun; "a deadly assault was made upon the defendant by the deceased and the brother of the deceased, and the trial judge should have charged this section of the code in connection with the law of voluntary manslaughter, for the reason, as defendant contends, that there was a mutual intention to fight and that both the deceased and the defendant were armed with deadly weapons and both did fight."

(2) Error in not admitting the testimony of Frank Holloway, as follows: "My brother did not run up and hit the defendant. He did not do that after I shot. I hit him with his gun. I knocked him down. I thought he was dead. I thought I had. I thought it was the defendant. I thought I killed him. · I tried to kill him." The exclusion of this testimony is assigned as error, "for the reason that the same is relevant and tends to show that this witness, who is a brother of the deceased, made an attack upon the defendant, and together with the other evidence in the ·case, including the defendant's statement, shows that a joint attack was made upon the ·defendant. Objection was made by the counsel for the State that all evidence as to the defendant having been hit or beat with a gun or stick by parties other than the deceased, also as to the defendant's statement, was irrelevant, and the same was excluded

from the consideration of the jury by the court in not admitting the testimony; and his refusing to admit the testimony was highly prejudicial to the rights of the accused."

(3)   Error in interrupting the argument of John R. Cooper, who was leading counsel for the defendant, as follows: "Pending the argument of Col. John R. Cooper to the jury in this case as counsel for the defendant, he made mention that this was shown by the evidence and the statement of the defendant.   This was objected to by the State's counsel, on the ground that it was irrelevant, having occurred after the shooting of the deceased by other parties, and further that the evidence alluded to and the statement of the defendant had been ruled out by the court.   By the court: 'I ruled it all out that occurred after the shooting as irrelevant; also ruled out the same matter in the statement of the defendant, on the ground that he could not lug in immaterial matter through his statement.' "   The exception is that it was error to interrupt the concluding argument of the defendant's counsel while he was stating to the jury what had transpired in the trial of the case, for the reason that the defendant had the right to make to the jury such statement as he saw fit in his defense, and that part of the defendant's statement that he had been attacked by a brother of the deceased either before or after the shooting was material to the defense of the defendant.   "The defendant contended in his statement that the deceased and his brother both attacked him before he shot, and defendant contends that the court had no right to interrupt defendant's counsel when he was stating to the jury what the defendant claimed in his statement.   This part of his statement was very material to his defense, and it was prejudicial error for the trial judge to refuse to allow counsel for the defendant to comment on the defendant's statement."

(4)   Error in the following instruction of the court to the jury:   "If you believe that the facts and circumstances surrounding him at the time he fired the shot, if he did fire it, were sufficient to justify the fears of a reasonable man that an injury was about to be inflicted upon him less than a felony, under these circumstances he would be guilty of voluntary manslaughter, if not justified."   The exception is "for the reason that it cuts him off from the killing a person under the fears of a reasonable man actually

believing that his life is in immediate danger, or else that a serious personal injury is about to be inflicted upon him by the deceased. If this be true, he should be acquitted if he was acting under the circumstances as narrated by the court, and he would not be guilty of any offense under the law. Defendant excepts to this charge further for the reason that the same is misleading to the jury, because the court says that under the circumstances as related in his charge he would be guilty of voluntary manslaughter, if not justified. The defendant was entitled to a more complete and fuller charge on the doctrine of reasonable fears and justifiable homicide."

(5) Error in excluding from the consideration of the jury the following part of the defendant's statement: "Frank said that he would kill me, and came over and struck me over the head with his gun. He did that after the shooting." It is alleged that this part of the statement was material to the defense, because it showed that the defendant had been attacked by the deceased and his two brothers. "He claims that they attacked him before the alleged homicide and also after the homicide. The defendant has a legal right to make to the court and jury such statement as he deems proper in his defense, and the court has no right to interfere with him while he is doing so. The defendant was on trial for a capital offense, and it was prejudicial and harmful error for the trial judge to stop the defendant while he was making his statement to the jury, and telling him that he could not state certain things because they were immaterial and irrelevant."

(6) The same error is assigned because the court excluded from the consideration of the jury the following part of the defendant's statement: "After I shot he broke and run to the door, and Frank came to the door and shot me in the back of the head. Will and Frank run upon me and hit me across the head with the gun, and they beat me."

(7) Error in the admission of testimony as to statements made by the deceased after the shooting, because no proper foundation was laid for its admission; the defendant contending that the con-- versation between the deceased and the witness was not admissible, because it failed to show that the deceased was in a dying condition and was conscious of his condition.

Grounds 2, 3, 5, and 6 were qualified by the following note of

the presiding judge: "The exceptions taken are not clear to me. What happened on the trial was that the solicitor-general objected to all evidence by any witness and to that part of the defendant's statement which related to anything transpiring *after* the shooting of the deceased by the defendant, and moved to exclude same from the jury's consideration, as being irrelevant and not illustrating the issue before the jury. This objection and motion was sustained by the court, and this was the extent of the court's ruling. No motion for a mistrial was made because the court interrupted and restricted the argument of counsel."

*W. O. Cooper Jr.,* for plaintiff in error.

*George M. Napier, attorney-general, E. M. Owen, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J. (After stating the foregoing facts.)

1. No request was presented to the court that the jury be charged section 73 of the Penal Code, or upon any other feature of the case. While the defendant, if he desired fuller instructions as related to the doctrine of mutual combat, might perhaps properly have requested an amplification of what was said by the court to the jury upon this subject, no reason suggests itself why the giving in charge of section 73, under the evidence in the record, would have been of advantage to the defendant. If for the sake of argument we should concede that the judge did not present the law of voluntary manslaughter as applicable to mutual combat, the provisions of section 73 likely would not have been understood by a jury as having any reference to the offense of voluntary manslaughter, unless the trial judge by additional proper instructions had explained to the jury how the provisions of this section might affect a case of mutual combat, if such appeared from the evidence.

2. The remaining assignments of error present three questions. Grounds 2, 3, 5, and 6 raise the question as to how far a trial judge is empowered to control the right of the defendant to make just such statement as he sees fit, and whether it is within the power of a trial judge in Georgia to exclude portions of a defendant's statement because under the rules of evidence they would be irrelevant or immaterial. The statement of a defendant in a criminal case is an anomaly, unknown to most of the commonwealths of this Union. But it has more than once been decided that the rules of evidence have no application to section 1036 of

the Penal Code. That section provides that "In all criminal trials, the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony in the case. The prisoner shall not be compelled to answer any questions on cross-examination, should he think proper to decline to answer." To show that this court has never treated the statement of a defendant as evidence, it has been held times almost numberless that a theory arising only from the defendant's statement need not be presented to the jury, nor need the jury be instructed as to the law applicable to the theory presented in the statement, in the absence of a written request for such instruction. The statement not under oath "shall have such force only as the jury may think right to give it." But it is to be, not what may be relevant or material according to the strict rules of law, but "such statement in the case as he [the defendant] may deem proper in his defense." The defendant is not subject to cross-examination upon the statement; and yet, although the statement is in a sense outlawed as evidence, and the jury may disbelieve a part and believe another part or disbelieve it in toto, and though it is not evidence, the jury "may believe it in preference to the sworn testimony in the case." The last consideration certainly places the statement above all classification of evidence, if the jury see proper to believe it. The privilege of making this statement has existed in this State for many years, and the nature of the statement of the defendant in a criminal case has frequently been considered. The court may prevent repetition of the same statement, or debar all circumstances wholly disconnected in fact with the facts upon which the defendant bases his defense. But the statement of the defendant is not to be curtailed by either ruling or interruption merely because the facts stated by the defendant, and which constitute a part of his narrative of his connection with the case, may under the rules of evidence be irrelevant and do not present in law a valid defense. The statement of the defendant may be either what Judge Trippe held it to be, a poor privilege, or it may be, as held by Judge Bleckley, a right more valuable in some instances than the privilege of testifying; but in any event it is

not controlled by any of the rules of evidence, and the defendant is not confined to matters which are legally pertinent to the issue.

In *Coxwell* v. *State,* 66 *Ga.* 309, a case where the judge restricted the prisoner's statement after the defendant had occupied more than two hours in a rambling narrative, it was held that while the court may so far restrain a prisoner's statement as to prevent his occupying the time of the court and jury with long, rambling, and irrelevant matters, yet as to all matters connected with the case the prisoner may make such statement as he may think proper, and he should not be restricted to stating such facts as would be admissible in evidence. In the *Coxwell* case the trial judge interrupted the prisoner and required that the statement be made under the rules governing the admissibility of evidence. In passing upon this point Judge Crawford, delivering the opinion of this court, said: "The judge confined the prisoner within the limits prescribed for witnesses. This does not meet with the broad and liberal purposes which the legislature intended to accomplish. He is not allowed to come as *a witness;* he comes as *a prisoner,* charged with crime; he does not appear to give *testimony;* he appears to make *a statement,*—a right far higher than the narrow limits which confine and guard against hearsay and conclusions, and expressly forbids the admissibility from his own witness of that which the party himself may have uttered in his own behalf. In the exercise of this right he is authorized to make such statement in the case as *he may deem proper* in his defense. It was never contemplated that he should be embarrassed and circumscribed by the strict rules of law which control the admissibility of evidence. Nor, upon the other hand, should he be permitted to occupy the time of the court and jury with long, rambling, irrelevant matter inapplicable to the case, and which, of necessity, must always rest in the sound discretion of the judge. This right granted to the prisoner is a modern innovation upon the criminal jurisprudence of the common law, advancing, to a degree hitherto unknown, the right of the prisoner *to give his own narrative* of the accusation against him to the jurors, who are permitted to believe it in preference to the sworn testimony of the witnesses. The lawmaking power, having given this right of making his statement to the prisoner, and having authorized the jury to give it such force as they may think proper, makes it the duty of the judges to execute

the same in its letter and spirit; they are charged with the constitutionality but not with the policy of a law. But it is said that the right to rebut the prisoner's statement virtually destroys the right of the court to control the admissibility of testimony, as he may exclude from the mouths of witnesses what the prisoner has the right to say. Our first reply to this is: *ita lex scripta est.*" In *Vaughn* v. *State,* 88 *Ga.* 731, 735 (16 S. E. 64), Mr. Chief Justice Bleckley says: "The statement is not made under oath; the accused is not sworn as a witness; he is not subject to cross-examination without his consent. He is unrestricted by the rules of evidence, and may state any fact as to the condition of his own consciousness, or as to what he saw, heard, or believed at the time of the homicide." This is an express ruling that the statement of the defendant can not have cut from it particular statements which may appear to the court under the rules of evidence to be irrelevant. Under this ruling the defendant may state any fact that he saw, heard, or believed. As Judge Crawford remarked, *ita lex scripta est.*

It matters not that it appears anomalous that a defendant can state that which is irrelevant and that which in law can offer him no just ground of defense. Facts and circumstances wholly disconnected from any legal defense, and which might appeal merely to the sympathy of the jury and offer no reason for an acquittal, might cause a defendant indicted for murder to be recommended to life imprisonment rather than be subjected to capital punishment. Or such facts and circumstances irrelevant as evidence might cause the defendant to be punished as for a misdemeanor, where otherwise punishment would be inflicted as for a felony. Or in case of doubt as to the credibility of the State's testimony,—the jury having no less the right to consider the appearance and credibility of the defendant than the appearance of the witnesses against him,—the statement of the defendant, his manner of stating it, and the apparent candor of the reasons he might present as to the motives which influenced the act, even though he may overlook or omit any reference to the main charge, and though some of his statements under the rules of evidence might be objectionable as conclusions or hearsay, the statement allowed might create and justify such reasonable doubt of the defendant's guilt as would authorize an acquittal. In the present case the judge

withdrew certain statements of the defendant because they appeared to have been made with reference to matters occurring after the shot was fired which is alleged to have killed the deceased. But it not only appears from the record that the matters to which the defendant referred occurred so immediately upon the shooting as to be a part of one and the same transaction, but it also appears that the defendant claimed in his statement that he was attacked by one of the brothers of the deceased before the shooting, that Frank Holloway ran out of the door before he shot George Holloway, and he more than once stated that the reason why he shot was because he was being attacked by three brothers. Under the wording of our statute as construed by our courts, the defendant makes his own statement. It is only by the permission of the court that the defendant's counsel can make suggestions to his client, and then at the risk of greatly disparaging if not altogether discrediting every material fact that the defendant may have stated. The statement as it appears in the record is incoherent, and at one point the defendant says that he was shot at and knocked down by Frank Holloway after he had shot his brother George Holloway; but in the first part of his statement he definitely states that he was attacked by the brother of the deceased before the shooting, and that George, the deceased, then advanced upon him with a knife, and he concludes his statement with the assertion that he shot because he was attacked by three of them. It was for the jury to reconcile this conflict if they found that there was conflict in the statement; and it was for the jury to say, upon their consideration of the statement, whether the assault which the defendant said came after the shooting was the same as that alluded to in the first part of the statement or a second and different assault after the shooting. It was not within the power of the judge to extract and cast aside that portion of the statement of the defendant which related to a matter immediately after the shooting and upon the scene of it. It might have been found by the jury to corroborate the theory advanced by the defendant that the deceased and his two brothers had "double-teamed" on him and perhaps had made an assault prior to the shooting, which the defendant had overlooked and omitted to state, which would have justified the jury to find a mutual intent to fight and have reduced the homicide to voluntary manslaughter. Furthermore, if under any view of

the case the jury would have been authorized to find a verdict of voluntary manslaughter (and this grade of homicide was submitted to them by the trial judge), the fact that the defendant was beaten and dangerously shot might have influenced the jury in fixing the term for which the defendant should serve at hard labor, in case they found a verdict of voluntary manslaughter.

We are unable to determine, from the assignment of error in regard to the interruption of Mr. John R. Cooper, exactly the scope or nature of the interruption; and in view of this imperfection we make no ruling, but the exception as to the withdrawal of certain portions of the defendant's statement, upon the ground that as evidence they would be irrelevant, must in our opinion be sustained, and this error requires the grant of a new trial.

3. There is no merit in the assignment of error as made in the fourth special ground. It is well settled law that one who kills another under the fears of a reasonable man that the injury about to be inflicted upon him is less than a felony may be guilty of voluntary manslaughter. It is assigned as error that "the defendant was entitled to a more complete and fuller charge on the doctrine of reasonable fears and justifiable homicide." If more complete instructions on the subject were desired they should have been requested; but aside from that, the assignment of error does not point out how or in what respect the instruction should have been more complete, so as to present anything for decision.

4. Objection was made to the testimony of Mrs. Black, who testified she had a conversation with the deceased after the shooting, upon the ground that no sufficient foundation had been laid for the admission of the alleged dying declaration the witness was about to repeat. It appears from the brief of evidence that she testified that he was conscious of his condition, and her recital of what he said evidences that this is true. It appears from the record that the deceased died within forty hours after he received three wounds. The physician in attendance upon him testified that the mortal wound was one which entered the hip and the interior of his body. Not only from the statement made by the deceased to his brother a few hours after he was shot, to which reference has been made, but also from the grave character of the wound itself, the jury had the right to infer that his physical condition would apprise him with a consciousness of approaching death. We there-

fore think that the objection of the defendant's counsel, even if it were sufficiently full, is without merit.

As we feel constrained to grant a new trial upon the ground above stated, we shall not deal with the general grounds of the motion, nor express any opinion upon the evidence.

*Judgment reversed. All the Justices concur, except Hines, J., dissenting.*

BECK, P. J., concurs in the judgment.