### 40074. HUDSON v. THE STATE.

DECIDED JULY 11, 1963.

*Robert J. Reed,* for plaintiff in error.

*Jeff C. Wayne, Solicitor General, Frank Strickland, Jr.,* contra.

FRANKUM, Judge. Betty R. Hudson was indicted in the Superior Court of Hall County on 24 counts charging her with 24 separate offenses of altering instruments. She plead not guilty to each count, and on the trial of the case the jury returned a verdict of guilty with a recommendation that she be punished as for a misdemeanor. She made a motion for new trial on the general grounds and on 34 special grounds. That motion was overruled, and that judgment is assigned as error in the bill of exceptions to this court. The bill of exceptions also contains a

direct assignment of error on the sentence imposed by the court. Such additional facts as are necessary to an understanding of the ruling made will be stated in the opinion.

■ In the second special ground of the motion for a new trial error is assigned because the trial judge, over objection of counsel for the defendant made before the trial began, permitted a microphone to be placed in the courtroom and to remain therein during the course of the trial, which microphone was connected with a tape recorder in another room in the building which recorded the proceedings to be broadcast later by a radio station in Gainesville after the termination of the trial. The defendant contends, among other things, that she was deprived of a fair and impartial trial because of the close proximity of the microphone to her counsel's table, and that this amounted to a denial of her constitutional right of being represented by counsel because her counsel could not discuss with her in confidence issues during the trial without apprehension that matters thus discussed would be picked up and recorded for later broadcast.

This ground of the motion recites that counsel for the defendant made the following oral objection to the court out of the presence of the jury: "If the court please, I strongly object to it and move that before this trial proceeds that all of the broadcasting and recording equipment be removed from the courtroom on the grounds that I feel like any broadcast or replay of any portion of this trial will be a violation of Miss Betty Hudson's constitutional rights and that she will not be afforded a fair and impartial trial and it has been the history of our present system of jurisprudence that a person is entitled to a public trial but they should be protected from the embarrassment of their toils before the bar. I feel that it is beneath the dignity of the court to place the trial of this young lady before the public and especially since the man from the radio station has announced that he plans to broadcast excerpts. In the event there is an appeal and a subsequent retrial, with excerpts of this trial going through the county, I feel that this girl will be jeopardized. I feel that her counsel cannot give her an adequate defense with this microphone staring him in the face at every turn he has to make. Counsel does not practice law on the radio. Counsel

does not feel that any broadcast or any transcription or any recording should be made of this case for the public and therefore, we make that motion that it be removed from the courtroom."

So far as we are able to ascertain the assignment of error contained in this ground of the motion for a new trial presents a question of first impression. However, the principles involved are not new and their application to the facts in this case do not present much difficulty. These principles, that is, the constitutional guarantees to a right to a fair trial, are basic and fundamental and are of ancient origin. As observed by the late great Chief Justice of Georgia, Judge Russell, while he was an associate judge on this court: "In the bill of rights which the people themselves have set up for our government as well as their own, it is declared that 'no person shall be deprived of life, liberty, or property, except by due process of law'; that 'no person shall be deprived of the right to prosecute *or defend* his own cause in any of the courts of this State, in person, by attorney, or both'; and further, that 'every person charged with an offense against the laws of this State shall be confronted with the witnesses testifying against him, and shall have a public and speedy trial by an impartial jury.' From the time when at Runnymede, about seven centuries ago, King John placed his signature to Magna Charta, until the present day, it has been the habit of English-speaking people to deprive a fellow-man of his liberty only after a fair trial by an impartial jury, and after their verdict finding him guilty of the offense charged. And Magna Charta was not a new pronouncement of our rights, but a reiteration of the immemorial law of the land. A fair trial means one in which there shall be no bias or prejudice for or against the accused, and in which not only the witness chair and the jury box, but *the courthouse also shall be purged of every suspicious circumstance tending to take from the accused any of the rights given to him by the law."* (Emphasis ours.) *Robinson v. State*, 6 Ga. App. 696, 706-7 (65 SE 792).

Paraphrasing the language of the Supreme Court in *Atlanta Newspapers, Inc. v. Grimes*, 216 Ga. 74, 78 (114 SE2d 421): We recognize that the freedom of the press means the freedom to gather the news, to write, publish and circulate it, and that

gathering news embraces in these modern times not only the reporting of what transpires in the courtroom in the newspapers but the reporting of those things over the radio and television. We further recognize that there are inherent differences in the methods used by these newer types of news-gathering media and that they should not be so hemmed and hedged about as to be hampered in the exercise of the natural advantages which they enjoy, to wit, the transcribing on tape of the actual voices of those making the news or on film or "video tape" not only their voices but their images. The right to employ this art in reporting the news, however, if it be analogized to liberty of the press, is nevertheless subordinate to the independence of the judiciary and the proper administration of justice. *Atlanta Newspapers, Inc. v. Grimes,* supra (3). We might observe here, in passing, that we are aware of the established rule that it was within the discretion of the judge of the superior court to manage the business before the court and that his discretion in this regard will not be controlled unless it is shown to have been manifestly abused. *Perryman v. State,* 114 Ga. 545, 546 (1) (40 SE 746).

"It is also inherent in the problem that each case presents a different combination of facts, and must therefore rest on its own bottom, keeping in mind that it is the highest duty to insure a fair and impartial trial to all parties, and not to allow to be injected into the proceedings any illegal element to the prejudice of the defendant's rights in a criminal case, where his liberty and perhaps his life are at stake." *Felton v. State,* 93 Ga. App. 48, 49 (1) (90 SE2d 607). See also *Harwick v. State,* 98 Ga. App. 352, 354 (105 SE2d 769). These principles must be kept in mind when equating the freedom of the press or of other news media in the gathering of the news with the rights of persons accused of crimes to a fair and impartial trial. For as was observed in the matter of In re Hearings Concerning Canon 35 of the Canons of Judicial Ethics, 132 Colo. 591, 593 (296 P2d 465, 467): "'No freedoms are absolute.' The freedoms of speech and the press are not exceptions." The courts have the power and the duty "to determine the manner in which they shall operate in order to administer justice with dignity and decorum, and in such manner as shall be conducive to fair and impartial trials and the ascer-

tainment of truth uninfluenced by extraneous matters or distractions. If at any time the representatives of the 'press' in any field of activity interfere with the orderly conduct of court procedure, or create distractions interfering therewith, the court has the inherent power to put an immediate stop to such conduct." And, we might add that the court has not only the inherent power but the duty to keep the courtroom free of distractions which might tend to hamper the proper conduct of the trial and to see that conditions surrounding the trial are not prejudicial to the accused. We cannot say in the case before us that the defendant was not prejudiced, and that the conduct of her defense was not hampered by the presence of the microphone. The record shows that the microphone was within five feet of her counsel's table. It was so placed that it could pick up the proceedings of the trial, and this court will take cognizance of the fact that the accused and her counsel would be apprehensive that a microphone which was sensitive enough to pick up the voices of witnesses and the presiding judge would be sensitive enough to pick up even whispered conversations between them had within five feet of it. Under these circumstances the objection of counsel for the defendant was well taken, and the allowance of the microphone in the courtroom was the injection of an element into the trial of the case which may have caused defendant and her counsel to feel as if they had been placed in a strait jacket and which was calculated to prejudice the rights of the defendant to a fair and impartial trial and to hinder the defendant and her counsel in the conduct of her defense. The overruling of her objection thereto was error and requires the reversal of the judgment overruling the motion for new trial, the second ground of which complains of the overruling of that objection. It was likewise error to refuse the defendant's motion for a mistrial on account of the presence of the microphone in the courtroom as complained of in ground 33 of the motion.

In special grounds 3, 4, 6, and 7 of the motion for a new trial complaint is made of the admission in evidence over timely objection of the defendant of portions of the testimony on direct examination of the county auditor, R. M. Dillard. In the view we take of these assignments of error it is unneces-

sary to detail here the evidence objected to or the objections thereto. Examination of these assignments of error and of the brief of evidence reveals that with respect to these grounds counsel for the defendant brought out on cross examination of this witness substantially the same evidence as was objected to therein. "Conceding but not deciding that the testimony objected to was inadmissible and should have been excluded, the error was cured when counsel for the defendant brought out the same evidence again on cross examination of the witness. 'Whether the court erred in allowing a witness to testify to certain facts over objection is immaterial where later the same witness testified to the same facts without objection.' *Simmons v. State,* 34 Ga. App. 163 (128 SE 690). 'Error in the admission of certain evidence ordinarily is cured by the introduction without objection of other testimony to the same effect.' *Bullard v. Metropolitan Life Ins. Co.,* 31 Ga. App. 641 (6) (122 SE 75)." *Southeastern Greyhound &c. Inc. v. Hancock,* 71 Ga. App. 471, 472 (2) (31 SE2d 59). See also *Moore v. State,* 193 Ga. 877, 878 (2) (20 SE2d 403).

■ Special ground 5 and special ground 30 of the motion will be considered together. Special ground 5 complains because the court permitted a witness for the State to testify as to the amount "for which the warrant was originally issued and was originally signed for by the commissioners." This ground shows that the evidence objected to was conditionally admitted, and special ground 30 assigns error on the refusal of the court to rule the evidence out on the ground that it had not been subsequently connected up. Neither of these grounds identifies the warrant about which the witness was testifying, and it is impossible for this court to ascertain whether this evidence was harmful to the defendant. While a ground of a motion for new trial no longer needs to be complete within itself, yet, it is still essential that the plaintiff in error set forth in each ground of his motion facts, or by specific reference point out where in the record such facts may be found, as will enable the court to ascertain whether error has been committed in the admission or exclusion of evidence. *Harris v. State,* 96 Ga. App. 395, 400 (2) (100 SE2d 120); *Brown v. Carmanni,* 100 Ga. App. 116, 122 (5) (110 SE2d 543). Since

neither of these grounds refers specifically to the evidence about which the witness was testifying, this court cannot ascertain the merits of the grounds.

■ In special ground 34 of the motion defendant assigns error on a portion of the charge of the court on the credibility of the witnesses, it being contended that the portion on which error is assigned singled out the defendant for special attention by giving special instructions to the jury as to the weight and credibility of her sworn testimony. The charge assigned as error in this ground was not erroneous for any reason assigned. However, under the facts in this case, it would have been better had the court instructed the jury substantially in the following language: "The court instructs the jury, as a matter of law, that in this State one accused and on trial charged with the commission of a crime may testify in her own behalf, or not, as she pleases. You are instructed that when a defendant does testify in her own behalf, then you have no right to disregard her testimony merely because she is accused of crime; that when she does so testify she at once becomes the same as any other witness, and her credibility is to be tested by and subjected to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded to her testimony the jury have a right to take into consideration the fact that she is interested in the result of the prosecution, as well as her demeanor and conduct upon the witness stand; and the jury may also take into consideration the fact, if such is the fact, that she has been corroborated or contradicted by credible evidence or by facts or circumstances in evidence. And the court further instructs the jury that if, after considering all the evidence in this case, they find that any witness testifying on behalf of either side has wilfully and corruptly testified falsely to any fact material to the issue in this case, then they have the right to disregard the testimony of- such witness, except insofar as corroborated by other credible evidence or facts and circumstances in evidence. The question of the weight and credit to be given to each and every witness, on either side, is entirely for the jury." When the court does instruct the jury with reference to the credibility of the accused as a witness, he should instruct them with reference to the method to be used in determining the credibility of all witnesses.

■ The foregoing disposes of all the substantial questions presented by the assignments of error contained in the motion for new trial. There are a number of grounds which assign error because it is contended the court unduly restricted counsel for the defendant in cross examining witnesses for the State. With respect to these grounds it is sufficient to say that none of them show harmful or reversible error. Some of these grounds are incomplete in that they refer to the cross examination of witnesses, or attempted cross examination of witnesses, with respect to documentary evidence which is not properly identified by the grounds so as to enable the court to fully understand the nature of the assignments of error or to determine whether they are meritorious. Of course, upon another trial the defendant's right to have a thorough and searching cross examination of the witnesses called against her with respect to all relevant matters should be preserved.

Grounds 1, 16 and 28 of the motion relate to matters which are not likely to recur on another trial. Ground 1 complains of the refusal of the court to grant defendant a continuance. Ground 16 assigns error because the court sustained the State's objection to and dismissed a notice to produce certain documentary evidence served on the State by the defendant. One basis for the court's ruling with regard thereto was that the notice had not been timely served. Before another trial of this case counsel for the defendant should have ample time either to serve such notice to produce upon the State within time or to serve the proper person or persons with a subpoena duces tecum. Ground 28 complains because the court permitted a witness for the State to be recalled and to testify after she had been permitted to remain in the courtroom after giving her original testimony, although she was subject to the rule. It is obvious that this will not likely happen on another trial.

The remaining assignments of error including the direct assignment as to sentence imposed by the court on each count are not meritorious. The sentences imposed were within the limits fixed by law, and this court cannot say that they, either singly or collectively, were unjust, extreme, or oppressive. *Harper v. State*, 14 Ga. App. 603 (81 SE 817).

*Judgment reversed. Nichols, P. J., and Jordan, J., concur.*