49012. WALKER v. THE STATE.

EBERHARDT, Presiding Judge.

Lee Walker was indicted and convicted of the offense of aggravated assault, for that he shot through a door at Jacob Reese and wounded him in the hand and arm to the extent that it had to be amputated. He appeals, enumerating as error (1) the overruling of his motion for new trial on the general grounds, (2) allowing the prosecutor to remain in the courtroom, sequestration having been invoked, and to testify after other witnesses had done so, (3) denial of a mistrial because of an expression of opinion as to guilt by the District Attorney in his opening statement, (4) refusal to allow defendant to make an unsworn statement, the offense having occurred prior to the repeal of the unsworn statement law by amendment of Code Ann. § 38-415 and tried afterward, and (5) a charge that the jury might, in considering the defendant's sworn testimony, take into consideration the fact that he was interested in the outcome of the case, as well as his demeanor and conduct while on the stand. *Held:*

1. The general grounds are without merit.

2. The district attorney requested of the court that the prosecutor be allowed to remain in the courtroom to assist in the presentation of the case. "It has been repeatedly held that it is within the discretion of the trial judge to permit a witness to remain in the courtroom to assist either the state or the accused, and while it is better that the witness should be first examined, this, too, is a matter of discretion, and the action of the court in these respects will not be reviewed. *Carter v. State,* 2 Ga. App. 254 (58 SE 532); *Shaw v. State,* 102 Ga. 667 (29 SE

477).". _Benton v. State,_ 9 Ga. App. 291 (6) (71 SE 8). Accord: _Dye v. State,_ Ga. 220 113, 114 (2) (137 SE2d 465); _Sparks v. State,_ 121 Ga. App. 115 (3) (173 SE2d 239).

3. In his opening statement to the jury the district attorney asserted "He [the judge] will tell you what the law is, and you are supposed to apply the law to the facts that have been presented to you, but I really and truly believe that you are going to find that he [the defendant] was not justified in blowing a man's hand off or the lower part of his arm off, and that he was under some kind of reasoning . . ." to which counsel for the defendant interposed objection and moved for a mistrial on the ground that it was improper for the district attorney to state his personal opinion as to the guilt or innocence of the defendant.

The court admonished the jury to disregard this statement of the district attorney, informed them that while the district attorney had the right to state what the state expected to prove and what he believed the evidence would justify to the jury in drawing certain inferences, but that he was not permitted to assert a personal belief as to the defendant's guilt, and that it was wholly a prerogative of the jury to decide the matter of guilt or innocence from the facts as proven; that they were not to be influenced in any expression of personal opinion by counsel and that it was to be utterly disregarded, and thereupon denied the motion for mistrial.

"[T]his court has repeatedly held that if the trial judge acts immediately, and in the exercise of his discretion takes such action as in his judgment prevents harm to the accused as a result of such improper statements, a new trial will not be granted unless it is clear that such action failed to eliminate from the consideration of the jury such improper statements. _Brown v. State,_ 148 Ga. 264, 266 (96 SE 435); _Johnson v. State,_ 150 Ga. 67 (1) (102 SE 439); _Waller v. State,_ 164 Ga. 128 (4) (138 SE 67). _Nelson v. State,_ 187 Ga. 576, 583 (1 SE2d 641); _Spell v. State,_ 225 Ga. 705, 708 (171 SE2d 285). See also _Moore v. State,_ 228 Ga. 662, 664 (187 SE2d 277)." _Howard v. State,_ 229 Ga. 839, 840 (195 SE2d 14). As in those cases, no abuse of discretion appears here.

4. The crime is alleged (in the indictment) to have been committed April 2, 1973. The unsworn statement law was repealed by Ga. L. 1973, p. 292, amending Code Ann. §§ 26-401 (a), 27-405, and 38-415, effective July 1, 1973. This trial was held August 7, 1973. When the state concluded the introduction of its evidence and rested defendant's counsel sought to put the defendant up for making an unsworn statement, contending that since the crime was alleged to have been committed prior to the effective date of the law abolishing unsworn statements, the abolition did not apply to the defendant.

The trial judge observed that in his view the change made by Ga. L. 1973, p. 292 was procedural only, and that it did apply to the present situation so that the defendant had only two options, one being to remain silent — which could not be held against him, and the other to take the stand, be sworn and testify as a witness. Under objection and protest the defendant elected to testify, and did. This ruling by the trial judge is enumerated as error.

If the change effected by Ga. L. 1973, p. 292 was procedural only and did not alter the situation to the disadvantage of the accused, the ruling of the trial judge was correct.

A similar situation arose when the bifurcated trial was introduced into our criminal procedure, and an accused whose offense was alleged to have been committed prior to the effective date of that Act objected to trial of his case under it, asserting that he had the right to proceed under the law as it had existed when the offense was committed. Our Supreme Court, in *Todd v. State,* 228 Ga. 746 (187 SE2d 831), after an excellent research of the problem raised, held that the change was procedural only and application of the new procedure did not violate the ex post facto principle.

In *Todd,* supra, the court relied on and quoted approvingly from People v. Ward, 50 Cal. 2d 702 (328 P2d 777, 76 ALR2d 911); Thompson v. Utah, 170 U. S. 343 (18 SC 620, 42 LE 1061) and Thompson v. Missouri, 171 U. S. 380, 387 (18 SC 922, 43 LE 204), all of which were criminal cases dealing with the issue of whether an Act which is procedural in nature violates the ex post facto rule when applied to a previously committed offense.

These cases hold that there is no violation unless it results in the infliction of greater punishment for the crime or "alters the situation of the accused to his disadvantage."

The disadvantage test is found in Thompson v. Missouri, supra: " '[W]e cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense. Nor can the new rule be characterized as unreasonable—certainly not so unreasonable as materially to affect the substantial rights of one put on trial for crime. The statute did not require "less proof, in amount or degree," than was required at the time of the commission of the crime charged upon him. It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible, and did not disturb the fundamental rule that the state, as a condition of its right to take the life of an accused, must overcome the presumption of innocence, and establish his guilt beyond a reasonable doubt.' " These same things can be said of the Act abolishing the unsworn statement. It does not change the character of the offense charged, or the punishment which may be imposed. It does not lessen the burden of proof resting upon the state. It does not alter the rules of evidence (the unsworn statement is not evidence or controlled by the rules of evidence. *Prater v. State,* 160 Ga. 138 (2) (127 SE 296)).

The accused has no vested right in procedural matters. "A party has no vested right in a defense based upon an informality not affecting his substantial equities . . . there is no such thing as a vested right to do wrong." *Bullard v. Holman,* 184 Ga. 788 (193 SE 586, 113 ALR

763); *Darby v. Cook,* 201 Ga. 309, 311 (39 SE2d 665). "[F]or the purpose of operating on the remedy only, the Legislature may, undoubtedly, pass Retrospective Acts; and for such purposes, they are not unconstitutional." *Knight v. Lasseter,* 16 Ga. 151, 153. "The procedures of courts are always subject to legislation. The amended Act of 6th December, 1880, repealed the ten days' limitation of the 4161st section of the Code, and the duty and direction it imposed ceased to exist." *Willis v. Fincher,* 68 Ga. 444. And so here, the Act of 1973, when it became effective on July 1 of that year simply caused the procedure of making an unsworn statement by defendants in criminal cases to cease to exist, and substituted the procedure of sworn testimony.

5. Error is enumerated upon a portion of the charge relating to the testimony of the defendant in which the court instructed: "You have the right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct on the witness stand." We find no error. "The jury would be authorized to give his testimony such weight and credit as that of any other witness." *Williams v. State,* 223 Ga. 773, 775 (4) (158 SE2d 373). Accord, *Hogan v. State,* 221 Ga. 9, 12 (142 SE2d 778). "[W]hen [the accused] does so testify [he] at once becomes the same as any other witness, and [his] credibility is to be tested by and subjected to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded to [his] testimony the jury have a right to take into consideration the fact that [he] is interested in the result of the prosecution, as well as [his] demeanor and conduct upon the witness stand . . ." *Hudson v. State,* 108 Ga. App. 192, 199 (4) (132 SE2d 508, 100 ALR2d 1395), cited approvingly in *Hogan v. State,* 221 Ga. 9, 12, supra, and in *Mitchell v. State,* 121 Ga. App. 382 (173 SE2d 709).

This interest of a witness in the result of the matter on trial, whether civil or criminal in nature, or lack thereof, is a matter which the jury is always authorized to consider in passing upon his credibility (*Detwiler v. Cox,* 120 Ga. 638 (48 SE 142); *Zetterower v. State,* 87 Ga. App. 24 (73 SE2d 88)), and it is especially true where the

witness is himself a party to the cause. *Smith v. Davis,* 203 Ga. 175 (3) (45 SE2d 609). It is not error for the court to so instruct.

*Judgment affirmed. Bell, C. J., Pannell, P. J., Quillian, Clark, Stolz and Webb, JJ., concur. Evans, J., concurs in part and dissents in part. Deen, J., concurs with dissent as to Enumeration of error No. 1.*

SUBMITTED FEBRUARY 6, 1974 — DECIDED JUNE 14, 1974 —
REHEARING DENIED JULY 5, 1974 — 

*Guy B. Scott, Jr.,* for appellant.
*Harry N. Gordon, District Attorney,* for appellee.

EVANS, Judge, concurring in part and dissenting in part.

I concur with Divisions 1, 3 and 5 of the majority opinion. I dissent from Division 2 and from Division 4. My reasons for dissent are set forth hereafter.

*Enumeration of Error No. 1:* State's counsel requested the court to allow J. P. Reece, the prosecutor, to be excepted from the rule of sequestration "due to the fact that I plan to call him about the fourth witness and I need him for an orderly presentation of the case and to assist me during the prosecution." Defendant's counsel objected and requested that the state be required to place the prosecutor on the witness stand before any other witness, "if he stays in the courtroom." The court inquired of state's counsel *if he needed the prosecutor to assist him,* and on receiving an affirmative answer, overruled defendant's objection.

Instead of placing Reece on the witness stand *fourth,* as he had promised the court, state's counsel did not introduce him until his *ninth* witness, and only one more witness was introduced afterwards by the state. He thereby permitted the prosecutor to hear the testimony of eight of the ten witnesses before calling him to the witness stand.

The record is completely silent as to any aid or assistance rendered by the prosecutor to state's counsel during the trial, despite his assertion that the prosecutor

was needed for that purpose.

There is no suggestion in the record that the trial judge exercised any discretion on the principal point, that is, as to requiring the prosecutor to be sworn before the other witnesses testified. The only discretion shown to have been exercised was the allowing of the prosecutor to remain inside the courtroom, *and not as to the order or sequence in which he was required to testify.*

The majority opinion has missed the point here involved. It urges that the trial court had a discretion to allow one or more of the witnesses to *remain inside the courtroom* under certain circumstances, and so it had. The majority opinion cites the following authorities, to wit: *Carter v. State,* 2 Ga. App. 254, 266 (58 SE 532); *Benton v. State,* 9 Ga. App. 291 (6) (71 SE 8); *Sparks v. State,* 121 Ga. App. 115 (3) (173 SE2d 239); *Shaw v. State,* 102 Ga. 660 (5), 667 (29 SE 477); *Dye v. State,* 220 Ga. 113, 114 (137 SE2d 465). Each of these authorities deals with the trial judge's discretion in allowing certain witnesses to *remain inside the courtroom.* But the objection made at the trial, and the enumeration of error, is not as to allowing the prosecutor to remain inside the courtroom, *but in not requiring him to be sworn as state's first witness,* so he could not hear the other witnesses testify for the state.

Code § 38-1703 deals with sequestration of witnesses but nothing therein is set forth as to whether witnesses shall remain inside or outside the courtroom; to the contrary, the statute guarantees that, "the witnesses of the other party [shall be] examined *out of the hearing of each other.*" This can be easily accomplished by requiring the witness who remains inside the courtroom to testify before the other witnesses on his side of the case, so he will not hear them testify.

In *Tift v. Jones,* 52 Ga. 539 (4), it is held: "When a party to an action intends to be a witness for himself, and the court directs that his witnesses be separately examined, it is the proper rule, unless there be special reasons to the contrary, that such party should first be examined in the absence of his other witnesses, in order that he may thereby be present, as is his right, during the whole trial of his case."

In *Hall v. Hall,* 220 Ga. 677, 679 (1) (141 SE2d 400), the witness remained in the courtroom but was called after plaintiff's witnesses, but as the first witness on his side of the case. The Supreme Court held that, "these facts show no violation of the statute *which requires only that the witnesses of the other party be examined out of the hearing of each other.*" (Emphasis supplied.) On the same page it is also held that as to Code § 38-1703, "This is a right conferred by statute, and its denial is presumptively injurious, *unless the contrary appears.*" (Emphasis supplied.)

To show that the trial court's rulings on this matter are correct, it would be necessary to find the following facts in the record, to wit: a. The state must have shown a necessity to have the prosecutor remain inside the courtroom. b. The state must have shown a necessity or reason for not requiring the prosecutor to testify before the other witnesses for the state testified. c. The trial judge must be shown to have exercised the discretion vested in him in making a ruling permitting the prosecutor to stay inside the courtroom, *and not sworn as state's first witness.*

But these facts are not in the record! State's counsel did urge the court that he needed the prosecutor inside the courtroom to assist him, but the record does not bear him out; no assistance whatever is shown. The state showed no necessity or reason for having the prosecutor not testify as state's first witness. To the contrary, state's counsel stated to the court he would use the prosecutor as his fourth witness; and then he did not comply with his promise, but waited until eight witnesses for the state had been sworn, and called the prosecutor as witness number nine. Only one other witness was sworn thereafter.

But the most damaging phase of this part of the case is that the trial judge exercised no discretion whatever in not requiring the prosecutor to be sworn first, nor as to allowing the prosecutor to be called fourth, or ninth. The record simply shows no discretion on this point was exercised by the trial judge. His entire discretion was directed to *allowing the prosecutor to remain inside the courtroom; and not as to whether he should be sworn as*

*the first witness for the state.*

When a trial judge is vested with a discretion to decide certain procedure, and to permit certain procedure or not to permit it, and acts without using the discretion vested in him, what are the consequences? This is clearly answered in *Harrington v. Frye,* 116 Ga. App. 755, 756 (159 SE2d 84), as follows: "A statute which confers upon a judge discretion to decide questions of procedure in cases tried before him imposes a correlative duty that he exercise such discretion when the occasion arises. *Loomis v. State,* 78 Ga. App. 153, 164 (51 SE2d 13); *Lowance v. Dempsey,* 99 Ga. App. 592 (109 SE2d 318); *Marion County v. McCorkle,* 187 Ga. 312, 313 (2) (200 SE 285)." That is exactly what happened here. The trial judge exercised his discretion as to allowing the prosecutor to remain in the courtroom, but as to the greater question, the objection and motion defendant made then and there, and the point on which he enumerates error, to wit, not requiring the prosecutor to be first sworn before hearing the other witnesses for the state, he exercised no discretion whatever. This is reversible error. *Stuart v. State,* 123 Ga. App. 311, 313, 316-318 (180 SE2d 581), and cits.

*Enumeration of Error No. 4:* Defendant requested the privilege of making an unsworn statement to the jury, which the court denied. The majority opinion affirms this ruling, and I respectfully dissent.

The crime is alleged to have been committed on April 2, 1973, when the unsworn statement law was fully effective (Code Ann. § 38-415), but the trial did not take place until August 7, 1973, after the unsworn statement law had been repealed. See Ga. L. 1973, p. 292.

The majority opinion contends the change in the law was *procedural only;* and that the constitutional prohibition against ex post facto and retroactive laws (Code Ann. § 2-302) does not apply.

In *Whittle v. Jones,* 198 Ga. 538, 543 (3) (32 SE2d 94), it is held that: "A repealing Act will not be given a retroactive operation so as to divest *previously acquired rights* [citing *Dennington v. Mayor &c. of Roberta,* 130 Ga. Ga. 494 (61 SE 20)]. So, it would seem that if the applicant be correct in his contention that the amendment

undertook to deprive him of *a substantial right,* the answer would be that the amendment . . . would not be given a retrospective operation so as to include him." (Emphasis supplied.) And in *Bullard v. Holman,* 184 Ga. 788 (2) (193 SE 586), it is held that: "The same rule which forbids interference with vested rights likewise prevents the disturbance of *vested defenses."* (Emphasis supplied.)

Thus, we believe the majority opinion correctly sets forth the issue of law, to wit, does this amendment of 1973, striking down the unsworn statement law, relate to *a procedural matter only,* or does it deprive defendant of *a substantial right?* If *procedural only,* the majority opinion is correct; if *substantial rights* are taken away, the majority opinion is incorrect.

There can be no doubt whatever that the right to make an unsworn statement in a criminal case is a *substantial right.* This court, in *Whitehead v. State,* 96 Ga. App. 382, 384 (1) (100 SE2d 139), held: "The right of a defendant in a criminal case to make an unsworn statement in his own behalf is 'a right far higher than the narrow limits' governing the admissibility of evidence. *Coxwell v. State,* 66 Ga. 309, 316. It is a *substantial right* which should not be abridged in any case. *Skinner v. State,* 13 Ga. App. 370 (2) (79 SE 181). The defendant here made no statement to the jury because, at the only time during the trial when under the laws of procedure and the rulings of the court he could have made such a statement, he was mentally unable to do so. He was accordingly deprived of a substantial right, from which it follows that he was not given, in its fullest sense, the right to a fair and impartial trial. In view of the error of the trial court in refusing to declare a mistrial, the assignments of error set forth in the general grounds of the amended motion for new trial are moot."

An unsworn statement is not considered to be evidence. *Coxwell v. State,* 66 Ga. 309, 316. As to the advantages to a defendant in making an unsworn statement, the Supreme Court of Georgia, in *Hackney v. State,* 101 Ga. 512, 519 (2) (28 SE 1007), held:

"Prior to the Act of 1874 the right of the accused in criminal cases to make a statement was restricted. By that Act, which is codified in section 1010 of the Penal

Code, the right was given to an accused in all criminal cases to make *such* statement in the case as he or she may deem proper *in his or her defense*. The accused is not under oath; the statement is not the foundation for impeachment by showing general bad character. *Doyle v. The State,* 77 Ga. 513; *Vaughn v. The State,* 88 Ga. 735. The defendant incurs no penalty for not speaking the truth. *Poppell v. The State,* 71 Ga. 277. The statement can not be restricted to such facts as would be admissible in evidence. *Coxwell v. The State,* 66 Ga. 310."

Again in *Coxwell v. State,* 66 Ga. 309, 310, 316 (5), the Supreme Court commented on the unsworn statement as follows: "This ruling brings us to a construction of the Act providing for prisoners in all criminal cases the right to make to the court and jury a statement, not under oath, involving his or her defense. This privilege was for the first time granted in 1868, and confined to cases of felony only. In 1874 it was extended to all criminal trials, and so stands today. The judge confined the prisoner within the limits prescribed for witnesses. This does not meet the broad and liberal purpose which the legislature intended to accomplish. He is not allowed to come as a *witness;* he comes as a *prisoner,* charged with crime; he does not appear to give *testimony;* he appears to make a *statement* — a right far higher than the narrow limits which confine and guard against hearsay and conclusions, and expressly forbids the admissibility from his own witness of that which the party himself may have uttered in his own behalf. In the exercise of this right he is authorized to make such statement in the case as *he may deem proper* in his defense. It was never contemplated that he should be embarrassed and circumscribed by the strict rules of law which control the admissibility of evidence. Nor, upon the other hand, should he be permitted to occupy the time of the court and jury with long rambling, irrelevant matter inapplicable to the case — and which, of necessity, must always rest in the sound discretion of the judge.

"This right granted to the prisoner is a modern innovation upon the criminal jurisprudence of the common law, advancing to a degree hitherto unknown the right of the prisoner *to give his own narrative* of the

accusation against him to the jurors, who are permitted to believe it in preference to the sworn testimony of the witnesses. The lawmaking power having given this right of making his statement to the prisoner, and having authorized the jury to give it such force as they may think proper, makes it the duty of the judges to execute the same in its letter and spirit; they are charged with the constitutionality but not with the policy of a law. But it is said that the right to rebut the prisoner's statement virtually destroys the right of the court to control the admissibility of testimony, as he may exclude from the mouths of witnesses what the prisoner has the right to say. Our first reply to this is: Ita lex scripta est; and our second is that this cannot occur except where the state, by its rebutting testimony, opens the door and thus makes admissible that which would be otherwise excluded."

And in *Drury v. State*, 211 Ga. 889, 890 (89 SE2d 513) the Supreme Court repeats and approves the language used above in the earlier *Coxwell* case.

In view of the foregoing, I do not see how any doubt can exist that the repeal of the unsworn statement law deprived defendant of a *substantive right.*

The new law would require defendant, if he utters one single word in his own defense, to be sworn and to submit to cross examination, as provided for in Code § 38-1705. Contrary to the rule that prevails in some other courts, a witness on cross examination in the courts of Georgia, may be interrogated as to matters about which he has not testified and on points which were not included in direct examination. See Code § 38-1705; *First National Bank of Birmingham v. Carmichael,* 198 Ga. 309, 314 (2b) (31 SE2d 811). He subjects himself to being *discredited and impeached* as a witness when he elects to testify as a witness under oath. *Mitchell v. State,* 71 Ga. 128 (6). The important right he had under the Constitution of this state against self-incrimination disappears when he elects to become a witness. Code § 1-805. His rights under the Federal Constitution, which went even further, guaranteeing all persons immunity from being "compelled to give testimony tending in any manner to criminate himself" are also lost by the

amended law. Most assuredly on cross examination under the law he must, on cross examination, give testimony which may "tend to criminate himself."

The majority opinion cites and heavily relies on *Todd v. State,* 228 Ga. 746 (187 SE2d 831). This case deals with the new law as to bifurcated trials, by which the trial as to guilt or innocence and the trial as to sentence, are held separately; and holds that such law is *procedural* and may be given a retrospective application. But much more in point are the cases of *Winston v. State,* 186 Ga. 573 (1) (198 SE 667); *Hurt v. State,* 187 Ga. 73 (199 SE 801); and *Camp v. State,* 187 Ga. 76 (200 SE 126), all being full bench decisions, and each holding that the law which took away from the jury the right to recommend mercy in a capital case is a *substantive right,* and may not be applied retroactively. These full bench decisions, not having been overruled, under the doctrine of stare decisis, take precedence and are controlling over the latter case as to bifurcated trials. See *Huley v. Huley,* 154 Ga. 321, 322 (2) (114 SE 184).

It is no answer to say that a defendant can refrain from becoming a witness, and may elect to remain silent. Of course he can, but this would deprive him of any right to justify himself, or to explain, or to defend by his own word of mouth. Nor is it an answer to say that no other state except Georgia had the unsworn statement law. Suffice it to say that Georgia had that law at the time the alleged offense here was committed, and its being taken away after the alleged offense was committed and before the trial, is the deprivation of a *substantial right.* It is not a question as to whether defendants ought or ought not to have ever had such a right; they did have it in Georgia and we are now concerned only with whether the new law will be allowed to operate retrospectively as to this defendant.

One authority quoted by the majority opinion suggests that, *"no person has a vested right to do wrong."* Such a statement is completely inane and inapplicable to this situation. This defendant — as are all defendants — during a trial — was presumed to be innocent; and no defendant ever claims that he had a vested right to do wrong. Surely, the making of an unsworn statement is

not equivalent to asserting "a vested right to do wrong." And neither can the request to make an unsworn statement be counted as equivalent to asserting "a vested right to do wrong." We repeat that this statement is inane — ridiculous!

I am authorized to state that Judge Deen concurs with this dissent as to Enumeration of Error No. 1.